OF APPEALS OF VIRGINIA


Present:    Judges Clements, Kelsey and Senior Judge Annunziata
Argued at Alexandria, Virginia


SARE ZEKTAW
                                                          OPINION BY
v.        Record No. 1122-07-4        JUDGE ROSEMARIE ANNUNZIATA
                                                          JULY 8, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Paul M. Pepper, Deputy Public Defender, for appellant.

Leah A. Darron, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


A jury convicted appellant of rape in violation of Code § 18.2-61(A)(i), abduction in

violation of Code § 18.2-47, and assault and battery in violation of Code § 18.2-57.  On appeal,

appellant contends the trial court erred in denying his motion to suppress his statement because

the police violated his Fifth Amendment right to counsel.  Appellant also argues the trial court

erred in denying his motion to set aside the verdict because a jury instruction pertaining to the

rape and abduction charges improperly defined "intimidation."  We affirm appellant's

convictions, finding no error in the denial of the motion to suppress or the instruction of the jury.

"'The burden is upon [the defendant] to show that th[e] ruling, when the evidence is

considered most favorably to the Commonwealth, constituted reversible error.'"  McGee v.

Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Fore v.

Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

Appellant came to the victim's home on February 9, 2006, having been invited for lunch.

The victim, who was then appellant's girlfriend, characterized their relationship as "rocky" and

stated they "fought a lot, and then . . . made up." Previously, the victim and appellant had had consensual sexual intercourse twice.

The victim did not want to have sexual intercourse with appellant on February 9, 2006, so she falsely told him her cousin was asleep in the bedroom of the apartment. When appellant discovered the victim's cousin was not in the apartment, he became angry. Appellant pushed the victim into the bedroom and slapped her. He then brought her to the kitchen, took out a knife sharpener, and threatened to kill her with it. When the victim continued to resist appellant's overtures, he began to strangle her with one hand, causing her to fall between two sofas. The victim injured her hip in the fall. While subsequently treating victim's hip wound, the appellant "came down on top of" her, and penetrated her anus and vagina with his penis. The victim testified "I [made] it clear that I didn't want to have sex, that I didn't want to take off my clothes and that I didn't want it."

On the afternoon of February 24, 2006, Detectives Robert Hickman and Sandy Hind of the Alexandria police met with appellant at the police department. Appellant had gone to the police station voluntarily after learning an officer had been trying to contact him. Neither Hickman nor Hind was assigned to an investigation involving appellant, nor did either officer have prior knowledge of the rape allegation pending against him. Ultimately, Hind learned of the rape charge from the case file of the detective assigned to the matter and of an arrest warrant that had been issued for appellant.

Hind informed appellant about the warrant and advised him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Appellant stated that he understood his rights. He placed his initials on the Miranda waiver form immediately next to the statement reciting each protected right, and he signed the form. Shortly after appellant signed the waiver, Hind told appellant that if he had "a version of the story to tell," he should relate it to the officers so that they could

determine whether to believe him or the victim. To this statement, appellant replied, "Right, and I'd really like to talk to a lawyer because this – oh, my God, oh, my Jesus, why?" Hickman testified that the officers "continued on" and "continued to ask him questions" after appellant made the statement containing a reference to a lawyer. Hickman further stated that "we just continued to talk to him and he continued to talk to us."[1] During the conversation appellant recited his version of the events involving the victim, answering questions raised by the officers, and correcting their statements. Appellant did not again refer to an attorney during the interview, which lasted about one and one-half hours.

In the course of the interview, appellant described the events of February 9, telling the detectives he and the victim had an argument that became heated and physical. Appellant admitted choking the victim and acknowledged that she injured her hip when he pushed her and she fell. Appellant claimed the victim sustained no other injuries. He also stated he had consensual sex with the victim after their argument, and before they went to Washington D.C. where he gave the victim an engagement ring.

## I. The Motion to Suppress

Appellant contends his statements were inadmissible because the police continued to question him after he had invoked his right to have an attorney present during the interrogation.

> The Supreme Court held in <u>Miranda</u> . . . that the police
> must inform a suspect, who is subject to a custodial interrogation,
> of his right to an attorney and his right to have that attorney present

---

[1] The record contains neither the recording of appellant's interview with the police nor a transcription of the recording. The Commonwealth's response to appellant's motion to suppress contains citations to an "unverified transcript" of the interview, and indicates the police responded to appellant's statement regarding a lawyer with the question, "Well, what did she tell you on the phone?" However, it is appellant's burden on appeal "to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." <u>Justis v. Young</u>, 202 Va. 631, 632, 119 S.E.2d 255, 257 (1961). "We . . . act only upon facts contained in the record" provided on appeal. <u>Smith v. Commonwealth</u>, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993). Therefore, regarding the manner in which the interview was conducted, we are limited to consideration of Hickman's testimony.

during the interrogation. The police must explain these rights to the suspect before the interrogation begins. If a suspect waives his right to counsel after he has received <u>Miranda</u> warnings, the police officers are free to interrogate him, but if the suspect requests counsel at any time during the interrogation, the interrogation must cease until an attorney has been made available to the suspect or the suspect reinitiates the interrogation. <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981); <u>accord</u> <u>Davis v. United States</u>, 512 U.S. 452, 458 (1994); <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 176-77 (1991); <u>Minnick v. Mississippi</u>, 498 U.S. 146, 150 (1990); <u>Patterson v. Illinois</u>, 487 U.S. 285, 291 (1988); <u>Arizona v. Roberson</u>, 486 U.S. 675, 680-81 (1988).

<u>Commonwealth v. Redmond</u>, 264 Va. 321, 328, 568 S.E.2d 695, 698 (2002).

The question whether a suspect actually invoked his right to counsel involves an objective inquiry. To invoke this right, a suspect must state his desire to have counsel present with sufficient clarity that a reasonable police officer under the circumstances would understand the statement to be a request for counsel. If, however, a suspect's reference to an attorney is either ambiguous or equivocal, such that a reasonable officer under the circumstances would only have understood that the suspect *might* be invoking his right to counsel, the officer is not required to stop questioning the suspect.

<u>Commonwealth v. Hilliard</u>, 270 Va. 42, 49, 613 S.E.2d 579, 584 (2005) (citations omitted).

On appeal,

[t]he issue whether a suspect invoked his right to counsel presents a mixed question of law and fact, which requires the application of these constitutional standards to the facts of a given case. <u>Redmond</u>, 264 Va. at 326, 568 S.E.2d at 697. When an appellate court conducts its independent review of a circuit court's determination of this issue, the appellate court may review the circuit court's findings of historical fact only for clear error and must give deference to the inferences that may be drawn from those factual findings. <u>Id.</u> at 327, 568 S.E.2d at 698; <u>see</u> <u>Ornelas v. United States</u>, 517 U.S. 690, 699 (1996).

<u>Id.</u> at 49-50, 613 S.E.2d at 584. However, where no dispute exists regarding the content of the defendant's statement to the police, our consideration of the trial court's denial of the motion to suppress "is restricted to a *de novo* review of the legal issue whether [appellant's] words, taken in context, were sufficient to invoke his right to counsel." <u>Id.</u> at 50, 613 S.E.2d at 584.

Considering this question, the Supreme Court of Virginia has found the following statements were not clear and unambiguous invocations of a suspect's right to counsel: "I'm scared to say anything without talking to a lawyer," Midkiff v. Commonwealth, 250 Va. 262, 265, 462 S.E.2d 112, 114 (1995); "Do you think I need an attorney here?," Mueller v. Commonwealth, 244 Va. 386, 396, 422 S.E.2d 380, 387 (1992); and "You did say I could have an attorney if I wanted one?," Eaton v. Commonwealth, 240 Va. 236, 254, 397 S.E.2d 385, 393 (1990).

In Hilliard, the Supreme Court of Virginia considered whether the defendant's statements, "Can I have someone else present too, I mean just for my safety, like a lawyer like y'all just said?" and "like I said, I would like to have somebody else in here because I may say something I don't even know what I am saying, and it might f[] me up, might jam me up in some incidents, and I don't want that to happen, man," were sufficient to invoke his right to counsel. Hilliard, 270 Va. at 46-53, 613 S.E.2d at 582-86. The Court found that these statements merely requested clarification of the rights that had been explained to the defendant and expressed his reservation about continuing interrogation without the benefit of counsel present. Id. at 51-52, 613 S.E.2d at 585-86. Therefore, not until the defendant in Hilliard stated, "Can I get a lawyer in here?" did the Court find that an unequivocal request for counsel had been made. Id. at 52, 613 S.E.2d at 586.

We find appellant did not clearly and unambiguously invoke his right to counsel by stating, "Right, and I'd really like to talk to a lawyer because this – oh, my God, oh, my Jesus, why?" Appellant stated he understood his constitutional rights and placed his initials beside each written recitation of the rights contained in the Miranda waiver form, including his right to have an attorney present during the police interrogation. He then signed the form, indicating his election to waive his rights and talk to the police without an attorney present. Appellant's

reference to a lawyer during the initial stage of his discussion with the police officers may be interpreted as an exclamation of disbelief, or of his awareness, regarding the situation in which he found himself. Whether appellant was requesting an attorney be present during the interrogation or was simply registering disbelief or awareness under the circumstances is not clear. His statement, open to more than one interpretation, was ambiguous. Tellingly, during the conversation that followed his statement, appellant did not again make a reference to an attorney, nor did he state he wished to consult with one during the ensuing interview.

Because appellant did not clearly invoke his right to counsel, we conclude that the detectives did not violate his Fifth Amendment rights by continuing to interrogate him. Accordingly, we find no error in the trial court's denial of appellant's motion to suppress.

## II. The Motion to Set Aside the Verdict

Over appellant's objection, the trial court granted Instruction 20, which defined the term "intimidation," as follows: "Intimidation means putting a victim in fear of bodily harm by exercising such control of her as to overcome her mind and overbear her will." Appellant contends the trial court erred in refusing to grant, in lieu of Instruction 20, the model jury instruction which states that "[i]ntimidation means putting a victim in fear of bodily harm by exercising such *domination and* control of her as to overcome her mind and overbear her will." Model Jury Instruction 48.675 (emphasis added).

"'The trial judge has broad discretion in giving or denying instructions requested.'" Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*) (quoting John L. Costello, Virginia Criminal Law and Procedure § 60.6-8, 810 (2d ed. 1995)). "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v.

Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "It is elementary that a jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the '"essentials of a fair trial."'" Id. (quoting Dowdy v. Commonwealth, 220 Va. 114, 116, 255 S.E.2d 506, 508 (1979)). In addition, "[a] proposed jury instruction submitted by a party, which constitutes an accurate statement of the law applicable to the case, shall not be withheld from the jury solely for its nonconformance with model jury instructions." Code § 19.2-263.2.

In pertinent part, Code § 18.2-61(A)(i) provides:

> If any person has sexual intercourse with a complaining witness, whether or not his or her spouse, or causes a complaining witness, whether or not his or her spouse, to engage in sexual intercourse with any other person and such act is accomplished (i) against the complaining witness's will, by force, threat or intimidation of or against the complaining witness or another person . . ., he or she shall be guilty of rape.

Pursuant to Code § 18.2-47(A), "[a]ny person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty . . . shall be deemed guilty of 'abduction.'" Thus, the rape and abduction statutes under which appellant was convicted do not require the Commonwealth to prove that the defendant exercised domination over the victim as an element of the offense.

Appellant's proposed instruction was based upon the Virginia Supreme Court's observation in Sutton v. Commonwealth, 228 Va. 654, 663, 324 S.E.2d 665, 670 (1985), that "[i]ntimidation, as used in [Code § 18.2-61], means putting a victim in fear of bodily harm by exercising such domination and control of her as to overcome her mind and overbear her will." Nonetheless,

> Virginia courts have often cautioned against lifting the "language of a specific opinion" for a jury instruction given that an appellate opinion "is meant to provide a rationale for a decision – and may not translate immutably into jury instructions." Va. Power v.

> Dungee, 258 Va. 235, 251, 520 S.E.2d 164, 173 (1999).  We
> discourage the "indiscriminate use of language from appellate
> opinions in a jury instruction," Blondel v. Hays, 241 Va. 467, 474,
> 403 S.E.2d 340, 344 (1991), because "statements appearing in
> opinions of this court, while authority for the propositions set forth,
> are not necessarily proper language for jury instructions," Oak
> Knolls Realty v. Thomas, 212 Va. 396, 397, 184 S.E.2d 809, 810
> (1971).

Seaton v. Commonwealth, 42 Va. App. 739, 753-54, 595 S.E.2d 9, 16 (2004).

The words "domination" and "control over" are essentially synonymous.  The word "dominate" is defined as "to control" someone or something.  Black's Law Dictionary 502 (7th ed. 1999).  "'When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle.'" Gaines, 39 Va. App. at 568, 574 S.E.2d at 778 (quoting Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984)).  Thus, we find no abuse of discretion in the trial court's refusal to grant appellant's proposed instruction containing a term that was redundant of the language in Instruction 20.

For the foregoing reasons, we affirm appellant's convictions.

                                                                Affirmed.