Present: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Goodwyn, JJ., and Lacy, S.J.

SARE ZEKTAW

v.  Record No. 081738     OPINION BY JUSTICE DONALD W. LEMONS
                                    June 4, 2009
COMMONWEALTH OF VIRGINIA

           FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether Sare Zektaw

("Zektaw") clearly, unambiguously and unequivocally invoked

his right to counsel during a custodial interrogation.

               I.  Facts and Proceedings Below

     Zektaw was charged with rape, attempted sodomy,

abduction, and assault and battery.  Zektaw maintains that the

sexual encounter that is the subject of these charges was

consensual.

     Zektaw filed a motion to suppress the statements he made

to police.  The trial court denied Zektaw's motion to suppress

and held that Zektaw's statement was not "a clear and

unequivocal request for a lawyer."  Detective Robert Hickman

testified during the suppression hearing that Zektaw came to

the police station after he learned that a police officer was

looking for him at his work place.  While he and another

detective were trying to determine the nature of the

investigation, Zektaw sat in an interrogation room and filled

out a "history sheet" with Detective Sandra Hein.  Zektaw was

"conversational" and responsive during this time, and he stated that he believed the investigation "involved a female" and he "wanted to know what accusations she made against him." Detective Hickman learned that there was an arrest warrant for rape outstanding against Zektaw.

Detective Hickman testified that Zektaw was still "talkative" and still offered "commentary" after he was informed of the arrest warrant for rape. Detective Hein read Zektaw his Miranda rights and "went through each individual right on the rights waiver sheet with him and asked him to tell her if he understood, and if he did understand, then he was to initial next to each one of those rights." Zektaw responded that he understood each of those rights and also placed his initials next to each recitation of the various rights on the waiver form. Detective Hickman witnessed Zektaw waive his rights as he read the waiver out loud and signed the waiver form. This process took "approximately four minutes" to complete. Zektaw's waiver form was admitted as evidence at the suppression hearing.

After Zektaw waived his Miranda rights, Detective Hickman, Detective Hein, and Zektaw continued their conversation. Detective Hickman testified that "[a]fter explaining to [Zektaw] what the charge was, Detective Hein just impressed upon him the fact that if he had a version [of]

2

a story to tell, that he should tell it to us." Specifically, Detective Hein

> about a minute and half, two minutes after the completion of the rights waiver, . . . made a statement to [Zektaw] that he should tell his story. She stated to him, yes your whole story out there, and then we'll know who to believe. And he stated "<u>Right, and I'd really like to talk to a lawyer because this – oh my God, oh, my Jesus, why?</u>" And then the conversation continued between Detective Hein and [Zektaw].

(Emphasis added.) On cross-examination, Detective Hickman conceded "other detectives in the room continued to ask [Zektaw] questions after he said he would like to talk to a lawyer." Zektaw did not mention a lawyer again during the rest of the hour-and-a-half interview, and he remained talkative. Detective Hickman also testified that Zektaw's demeanor did not change in any way during the entire course of the interrogation.

At trial, the Commonwealth introduced Zektaw's statements into evidence through Detective Hickman's testimony. Detective Hickman testified that Zektaw told him that, "[h]e went over to [SG's] apartment," they got into a "heated discussion and he became angry" and that

> at one point he choked her, began calling her some names, called her a b****, asked her words to the effect of what the f*** is this and he then – initially, he said that she fell. And then amended that to he pushed her and she fell down causing a scratch, I believe was his word, on her hip, I believe.

3

Detective Hickman also testified that Zektaw said he and SG "sat on the couch and spoke for a while longer and they then went into the bedroom and had sex."

The Commonwealth also introduced evidence at trial from the victim, SG, testimony from a Sexual Assault Nurse Examiner who stated that "to a reasonable degree of medical certainty" the injuries she observed on SG were consistent with nonconsensual sex, testimony of Fasil Alemu (SG's friend and neighbor) and Yeftusen Tiruneh (SG's cousin). Both Fasil Alemu and Yeftusen Tiruneh corroborated SG's version of the events. Furthermore, the Commonwealth introduced transcripts of voicemail left by Zektaw on SG's telephone and a recorded telephone conversation between SG and Zektaw in which Zektaw also partially corroborated SG's testimony.

The jury found Zektaw guilty of rape, abduction, and assault and battery and determined Zektaw's punishment to be eight years for the rape conviction, one year for the abduction conviction, and one year and a $2500 fine for the assault and battery conviction. Zektaw appealed to the Court of Appeals.

The Court of Appeals affirmed Zektaw's convictions and the trial court's decision denying Zektaw's motion to suppress. Zektaw v. Commonwealth, 52 Va. App. 230, 238, 240

4

663 S.E.2d 93, 97, 98 (2008).  In affirming the trial court's

denial of Zektaw's motion to suppress, the Court of Appeals

stated:

> [Zektaw's] reference to a lawyer during the
> initial stage of his discussion with the police
> officers may be interpreted as an exclamation of
> disbelief, or of his awareness, regarding the
> situation in which he found himself. Whether
> appellant was requesting [that] an attorney be
> present during the interrogation or was simply
> registering disbelief or awareness under the
> circumstances is not clear. His statement, open
> to more than one interpretation, was ambiguous.
> Tellingly, during the conversation that followed
> his statement, appellant did not again make a
> reference to an attorney, nor did he state he
> wished to consult with one during the ensuing
> interview.

Id. at 238, 663 S.E.2d at 96.

We awarded Zektaw an appeal on the following assignment

of error:

> 1. The Court of Appeals erred in upholding the erroneous
> rulings of the trial court and in deciding the
> defendant's words were ambiguous and that he did not
> clearly invoke his right to counsel.

II.  Analysis

A. Waiver

The Commonwealth argues that Zektaw waived his objection

to the admissibility of his statements by using the statements

himself at trial.  We have held that "[t]he rule is that

'where an accused unsuccessfully objects to evidence which he

considers improper and then on his own behalf introduces

5

evidence of the same character, he thereby waives his objection, and we cannot reverse for the alleged error.'" Hubbard v. Commonwealth, 243 Va. 1, 9, 413 S.E.2d 875, 879 (1992) (quoting Saunders v. Commonwealth, 211 Va. 399, 401, 177 S.E.2d 637, 638 (1970)); see also Drinkard-Nuckols v. Andrews, 269 Va. 93, 102, 606 S.E.2d 813, 818 (2005). However, there are

> some limitations on the operation of the waiver rule. For instance, when the objecting party elicits evidence of the same character either during cross-examination of a witness or in rebuttal testimony, a duly made objection is not waived:

>> We have never held that the mere cross-examination of a witness or the introduction of rebuttal evidence, either or both, will constitute a waiver of an exception to testimony which has been duly taken. To constitute such a waiver the party objecting to the evidence must have gone further and introduced on his own behalf testimony similar to that which the objection applies.

Drinkard-Nuckols, 269 Va. at 102, 606 S.E.2d at 818 (quoting in part from Snead v. Commonwealth, 138 Va. 787, 801-02, 121 S.E. 82, 86 (1924)); see also Culbertson v. Commonwealth, 137, Va. 752, 757, 119 S.E. 87, 88 (1923).

Zektaw did not introduce any new evidence on his own behalf that is "of the same character" as the statements to which he objected. Furthermore, Zektaw's use of his

6

statements was during his cross-examination of Detective

Hickman, the witness who introduced Zektaw's statements into

evidence.  The waiver rule is inapplicable under these

circumstances.

B. Invocation of Right to Counsel

When a "circuit court did not make any factual findings

regarding what [the defendant] actually said because the

parties did not dispute the content of his statements to the

police" our "appellate consideration of the circuit court's

denial of [the defendant's] motion to suppress is restricted

to a de novo review of the legal issue whether [his] words,

taken in context, were sufficient to invoke his right to

counsel."  Commonwealth v. Hilliard, 270 Va. 42, 50, 613

S.E.2d 579, 584 (2005).

The right to have counsel present during a custodial

interrogation is an axiom of American law expressed in Miranda

v. Arizona, 384 U.S. 436 (1966) and its progeny. The United

States Supreme Court in Miranda stated that

> [i]f the individual states that he wants an
> attorney, the interrogation must cease until an
> attorney is present.
>
> . . . .
>
> [i]f the interrogation continues without the
> presence of an attorney and a statement is taken,
> a heavy burden rests on the government to
> demonstrate that the defendant knowingly and
> intelligently waived his privilege against self-

7

incrimination and his right to retained or appointed counsel.

384 U.S. at 474-75.

In the case of Edwards v. Arizona, 451 U.S. 477 (1981), the United States Supreme Court explained

> when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.  We further hold that an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

Id. at 484-85 (footnote omitted).

In Arizona v. Roberson, 486 U.S. 675 (1988), the United States Supreme Court stated

> "that it is inconsistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel."  451 U.S. at 485.  . . . [R]einterrogation may only occur if "the accused himself initiates further communication, exchanges, or conversations with the police."  Ibid.  Thus, the prophylactic protections that the Miranda warnings provide to counteract the "inherently compelling pressures" of custodial interrogation and to "permit a full opportunity to exercise the privilege against self-incrimination," 384 U.S. at 467, are implemented by the application of the Edwards corollary that if a suspect believes that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the

8

authorities' behest, and not at the suspect's own instigation, is itself the product of the "inherently compelling pressures" and not the purely voluntary choice of the suspect.

Id. at 680-81 (footnote omitted).

However, the invocation of the right to counsel must be clear, unambiguous, and unequivocal. In Davis v. United States, 512 U.S. 452, 459 (1994), the Court held that

[a]s we have observed, "a statement either is such an assertion of the right to counsel or it is not." Smith v. Illinois, [469 U.S. 91, 97-98 (1984). An accused] must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, Edwards does not require that the officers stop questioning the suspect.

Here, the question is whether Zektaw's statement "Right, and I'd really like to talk to a lawyer because this – oh my God, oh, my Jesus, why?" under an objective, "reasonable police officer" test was a clear, unambiguous, unequivocal request for counsel.

Since Miranda and Edwards, we have reviewed several cases to determine whether a defendant's statement clearly, unambiguously, and unequivocally invoked his right to counsel. In some cases the defendants' statements were determined to be questions seeking clarification of their rights. See Hilliard, 270 Va. at 51, 613 S.E.2d at 585 (" 'Can I have

9

someone else present too, I mean just for my safety, like a lawyer like y'all just said?' " was not an unequivocal request for counsel); Commonwealth v. Redmond, 264 Va. 321, 330, 568 S.E.2d 695, 700 (2002), cert. denied, 538 U.S. 930 (2003) (" 'Can I speak to my lawyer?  I can't even talk to [a] lawyer before I make any kinds of comments or anything?,' were not a clear and unambiguous assertion of his right to counsel"); Mueller v. Commonwealth, 244 Va. 386, 396, 422 S.E.2d 380, 387 (1992), cert. denied, 507 U.S. 1043 (1993) (" 'Do you think I need an attorney here?' " did not constitute a request for counsel); Eaton v. Commonwealth, 240 Va. 236, 250, 252, 397 S.E.2d 385, 393, 395 (1990), cert. denied, 502 U.S. 824 (1991) ("You did say I could have an attorney if I wanted one?" was equivocal); and Poyner v. Commonwealth, 229 Va. 401, 410, 329 S.E.2d 815, 823, cert. denied, 474 U.S. 865 (1985) (" 'Didn't you say I have the right to an attorney?' . . . was not a request for counsel . . . [a]t most, it sought to clarify one of the rights of which he had already been advised").

In Hilliard we held that the defendant's request that he "would like to have somebody else in here because I may say something I don't even know what I am saying, and it might . . . jam me up" did not "'clearly and unambiguously communicate a desire to invoke his right to counsel.'"  270 Va. at 52, 613 S.E.2d at 585-86.  We also held that a

10

defendant's statement that "'he felt like he might want to talk to a lawyer' . . . was couched in ambiguous terms to the effect that he <u>might</u> want to talk to a lawyer." <u>Bunch v. Commonwealth</u>, 225 Va. 423, 430, 433, 304 S.E.2d 271, 275, 276, <u>cert. denied</u>, 464 U.S. 977 (1983). Additionally, we have held that " 'I'll be honest with you, I'm scared to say anything without talking to a lawyer" is an expression of a defendant's "reservation about the wisdom of continuing the interrogation without consulting a lawyer; however, it does not clearly and unambiguously communicate a desire to invoke his right to counsel." <u>Midkiff v. Commonwealth</u>, 250 Va. 262, 265, 267, 462 S.E.2d 112, 114, 115 (1995). Finally, the United States Supreme Court held that "'Maybe I should talk to a lawyer'- was not a request for counsel." <u>Davis</u>, 512 U.S. at 462.

However, in <u>Hilliard</u> additional statements by the defendant were considered. We held that when the defendant stated " 'Can I get a lawyer in here?' " and the detective responded, " 'Do you want to do that?' " and the defendant then said " 'I already have a lawyer. I mean, I can talk to you, don't get me wrong. But I just want to make sure I don't, like I said before, just jam myself up' " was a clear invocation of the defendant's right to counsel. 270 Va. at 52, 613 S.E.2d at 586.

11

In Smith v. Illinois, 469 U.S. 91 (1984), the United States Supreme Court considered a case in which the police officer said, " 'You have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that?' " and the defendant responded, " 'Uh, yeah. I'd like to do that.' " Id. at 93. The Court held that such an exchange was an unambiguous invocation of the right to counsel. See id. at 92. Additionally, the United States Supreme Court also held in Edwards that the defendant sufficiently invoked his Miranda rights when he stated "I want an attorney before making a deal." 451 U.S. at 487, 479.

The Commonwealth argues that Zektaw's statement, "Right, and I'd really like to talk to a lawyer because this – oh my God, oh my Jesus, why?," was ambiguous and equivocal. Specifically, the Commonwealth contends that Zektaw's statement was ambiguous and was not a clear assertion of his right to counsel because "[t]here were no pauses between Zektaw's various phrases; it was just one long sentence, and afterward the conversation between Detective Hein and Zektaw continued. The defendant made no further mention of having an attorney present. He continued asking questions and his level of talkativeness never varied." We do not agree.

12

Zektaw's statement was about "a minute and half, two minutes" after he completed his rights waiver form and came as a response to Detective Hein's question for him to tell his side of the story. Zektaw was not asking the police to clarify his rights as in Redmond, Mueller, Eaton, Poyner, and the first statement in Hilliard. Nor was Zektaw's statement asking for "somebody else," not a lawyer, to be with him as in the second statement in Hilliard. Zektaw also did not state he "might" want an attorney as in Bunch and Davis v. United States. Furthermore, Zektaw's statement did not express simply a "reservation about the wisdom of continuing the interrogation without consulting a lawyer" as seen in Midkiff. Instead, Zektaw's statement is more analogous to the statements made in Smith v. Illinois, Edwards v. Arizona, and the additional statements in Hilliard. Zektaw made clear that he wanted to talk to a lawyer when he said "I'd really like to talk to a lawyer." Under an objective test, a reasonable police officer would have understood Zektaw was requesting counsel. Zektaw's statement clearly, unambiguously, and unequivocally invoked his right to counsel. Plainly and simply, the interrogation should have ceased.

As the United States Supreme Court established, "a statement either is such an assertion of the right to counsel or it is not." Smith v. Illinois, 469 U.S. at 97-98 (brackets

13

and internal quotation marks omitted).  The Commonwealth argues, and the Court of Appeals held, that Zektaw's statement was really just "an exclamation of disbelief, or of his awareness, regarding the situation in which he found himself." Zektaw, 52 Va. App. at 238, 663 S.E.2d at 96.  Presumably, the Commonwealth and the Court of Appeals are referring to the latter part of Zektaw's statement in which he states "Oh my God, oh, my Jesus, why?"  This part of Zektaw's statement may have been "an exclamation of disbelief" or an "awareness [of his] situation;" however, it does not withdraw or negate the clear assertion of his right to counsel when he stated "Right, and I'd really like to talk to a lawyer."  Zektaw clearly asserted his right to counsel by stating "I'd really like to talk to a lawyer" and this unambiguous invocation of his right to counsel is not made ambiguous by the additional statement "Oh my God, oh, my Jesus, why?"

Furthermore, the Court of Appeals also mistakenly relies on the fact that Zektaw did not mention a lawyer again during the rest of the hour-and-a-half interview as indicating he did not clearly assert his right to counsel.  However, an "accused's subsequent statements are not relevant to the question whether he invoked his right to counsel."  Redmond, 264 Va. at 327, 568 S.E.2d at 698; see Smith v. Illinois, 469 U.S. at 98-99 ("Using an accused's subsequent responses to cast

14

doubt on the adequacy of [an initial request for counsel] is intolerable"). The Court of Appeals erred in relying on the subsequent responses of Zektaw to determine that Zektaw did not invoke his right to counsel on the basis that he did not mention an attorney again.

## C. Harmless Error

The Commonwealth argues that even if the trial court's denial of Zektaw's motion to suppress was error, it was harmless because there was sufficient evidence to convict Zektaw, without consideration of his incriminating statements. We do not agree.

As we have previously held

> [w]hen a federal constitutional error is involved, a reversal is required unless the reviewing court determines that the error is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24 (1967). The reviewing court must determine " 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' " Id. at 23 (quoting Fahy v. Connecticut, 375 U.S. 85, 86–87 (1963)). In making that determination, the court must consider, among other factors, "the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case." Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).

*Pitt v. Commonwealth*, 260 Va. 692, 695, 539 S.E.2d 77, 78

(2000).  Furthermore, in *Arizona v. Fulminante*, 499 U.S. 279

(1991), the United States Supreme Court, in determining whether

the admission of a wrongfully obtained confession into evidence

was harmless, considered whether the confession could have

influenced the sentencing phase.  *Id.* at 301-02.  We have also

stated that whether a defendant's sentencing was affected by an

error at trial is a factor in our harmless error analysis.

*Billips v. Commonwealth*, 274 Va. 805, 810, 652 S.E.2d 99, 102

(2007).

Zektaw's statements provided admissions that "he went over

to [SG's] apartment," they got into a "heated discussion and he

became angry" and that

> at one point he choked her, began calling her
> some names, called her a b****, asked her words
> to the effect of what the f*** is this and then
> – initially he said that she fell.  And then
> amended that to he pushed her and she fell down
> causing a scratch, I believe was his word, on
> her hip, I believe.

Detective Hickman also testified that Zektaw said he and SG

"sat on the couch and spoke for a while longer and they then

went into the bedroom and had sex."

We cannot conclude beyond a reasonable doubt that there is

no reasonable possibility that Zektaw's statements did not

contribute to his convictions or to the severity of the jury's

recommended punishment.  Zektaw's statements were inculpatory

16

on the assault and battery conviction and made the Commonwealth's case much stronger for the rape and abduction charges. Furthermore, the jury imposed a sentence of eight years for rape, which is three years over the statutory minimum of five years, Code § 18.2-61(B), and the jury imposed a sentence of one year with a $2500 fine for the assault and battery conviction, which is the statutory maximum under Code § 18.2-57. Accordingly, we cannot conclude that the admission of Zektaw's statements into evidence was harmless error beyond a reasonable doubt.

## III. Conclusion

For the reasons stated, we hold that the Court of Appeals erred in affirming the trial court's denial of Zektaw's motion to suppress. Accordingly, we will reverse the judgment of the Court of Appeals and remand the case to the Court of Appeals with direction to remand to the circuit court for a new trial if the Commonwealth be so advised.

Reversed and remanded.

17