COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Petty and Beales
Argued at Richmond, Virginia


GLENN ANTOINE HARRISON, JR., A/K/A
  GLENN HARRISON, JR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1256-09-1                      JUDGE LARRY G. ELDER
                                                    DECEMBER 21, 2010

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                          H. Thomas Padrick, Jr., Judge

              James O. Broccoletti (Zoby & Broccoletti, P.C., on brief), for
              appellant.

              Alice T. Armstrong, Assistant Attorney General II (Kenneth T.
              Cuccinelli, II, Attorney General, on brief), for appellee.


        Glenn Antoine Harrison, Jr., (appellant) appeals his jury trial convictions for first-degree

murder, in violation of Code §§ 18.2-32 and -10, and robbery, in violation of Code § 18.2-58.

On appeal, he contends that the trial court erred by admitting the autopsy report into evidence

when the performing medical examiner did not testify.  We assume without deciding that the

admission of the autopsy report violated appellant's constitutional right to confront witnesses,

and hold that any error was harmless beyond a reasonable doubt.  Therefore, we affirm the

convictions.


--------------------------------------------------------------------------------

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

ANALYSIS

Appellant contends that the trial court violated his constitutional right to confront witnesses against him by admitting the autopsy report and that the error was not harmless. The Sixth Amendment provides a criminal defendant the right to confront the witnesses "'who bear testimony' against him." Melendez-Diaz v. Massachusetts, __ U.S. __, __, 129 S. Ct. 2527, 2531, 174 L. Ed. 2d 314, 320 (2009) (quoting Crawford v. Washington, 541 U.S. 36, 51, 124 S. Ct. 1354, 1364, 158 L. Ed. 2d 177, 192 (2004)). Testimonial statements are the "sort [that] cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." Davis v. Washington, 547 U.S. 813, 821, 126 S. Ct. 2266, 2273, 165 L. Ed. 2d 224, 237 (2006). As the Supreme Court has explained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Id. at 822, 126 S. Ct. at 2273-74, 165 L. Ed. 2d at 237.

Although the Virginia Code reveals the General Assembly's intent for autopsy records and reports to be used as evidence against one accused of a homicide, see Code §§ 19.2-188(A), 32.1-283, this Court has not previously been called upon to determine whether an autopsy report

is testimonial.[1]  Because we find that any error in allowing the report was harmless, we need not resolve this question in order to dispose of this appeal.[2]

In considering whether an error is harmless, we apply the following framework:

> The Supreme Court, in Chapman v. California, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  As the Supreme Court stated in Delaware v. Van Arsdall, 475 U.S. 673, 681, 89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986), "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt."
> A court, when determining whether federal constitutional error is harmless, must consider several factors, including the importance of the tainted evidence in the prosecution's case, whether the evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and, of course, the overall strength of the prosecution's case.

Dearing v. Commonwealth, 259 Va. 117, 123, 524 S.E.2d 121, 124-25 (2000) (citation omitted).

The Commonwealth bears the burden of proving that a constitutional error was harmless beyond a reasonable doubt.  Chapman, 386 U.S. at 24, 87 S. Ct. at 828, 17 L. Ed. 2d at 710-11; Joyner v. Commonwealth, 192 Va. 471, 477, 65 S.E.2d 555, 558-59 (1951); Beverly v. Commonwealth, 12 Va. App. 160, 163-64, 403 S.E.2d 175, 177 (1991).

---

[1] In cases following Melendez-Diaz, most jurisdictions that have considered the issue concluded that autopsy reports are testimonial.  See Commonwealth v. Avila, 912 N.E.2d 1014, 1029 (Mass. 2009) (holding that the autopsy report was testimonial hearsay); State v. Locklear, 681 S.E.2d 293, 305 (N.C. 2009) (holding that the trial court erred by admitting "forensic analyses performed by a forensic pathologist and a forensic dentist who did not testify"); Wood v. State, 299 S.W.3d 200, 209-10 (Tex. Crim. App. 2009) (holding the autopsy report was testimonial where police suspected the death was a homicide).  But see People v. Cortez, 931 N.E.2d 751, 756 (Ill. App. Ct. 2010) (holding that autopsy reports are non-testimonial business records).

[2] "An appellate court decides cases 'on the best and narrowest ground available.'" Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (en banc) (quoting Air Courier Conf. v. Am. Postal Workers Union, 498 U.S. 517, 531, 111 S. Ct. 913, 922, 112 L. Ed. 2d 1125, 1139 (1991) (Stevens, J., concurring)).

This case stems from the murder of a woman this opinion refers to as "A.S." Ultimately, the only issue at trial for the fact finder to resolve was whether the Commonwealth properly identified appellant as the perpetrator. The other elements of the crime were not contested: whether A.S. was killed; whether the killing was malicious; and whether the killing was willful, deliberate, and premeditated. See Code § 18.2-32; see also Epperly v. Commonwealth, 224 Va. 214, 229, 294 S.E.2d 882, 891 (1982) (explaining that the Commonwealth must prove the fact of a death at the hand of another in order to prove a homicide, but does not need to establish the cause of death). The autopsy report tended to show that A.S.'s cause of death was drowning, with sharp and blunt force trauma contributing to her death. The report also tended to show that her assailant stabbed her numerous times and that she and her assailant struggled. The report opined that someone attempted to cleanse the scene of the murder with bleach. In sum, the autopsy report had no bearing on the determination of the perpetrator's identity.

The information in the autopsy report was largely cumulative of other evidence in the record. At trial, the Commonwealth introduced evidence that blood was spilled in the stair landing, on the walls, and in the bathroom. One investigator found a loose earring in the landing area. A.S.'s blood was found on a serrated knife blade. Photographs of the apartment showed blood on the couch, on the kitchen and living room walls, and on the floor and wall in the stairwell landing. The kitchen table was knocked over, and broken dishes lay on the kitchen floor. The photograph of A.S.'s body in the bathtub showed blood in the bathroom and darkened water in the tub with her body. This evidence independently indicated that A.S. struggled with her assailant.

The Commonwealth introduced evidence that A.S.'s apartment smelled strongly of chemicals. The couch had numerous stains and was missing a cushion, and investigators found numerous open or empty bottles of cleaning products throughout the residence. This evidence

established, separately and apart from the autopsy report, that the assailant attempted to clean the scene after the murder.

The parties stipulated that A.S. was the deceased and the subject of the autopsy in question. The photographs of the body, admitted without objection, provided independent graphic depictions of many of the injuries merely described in the autopsy report. There was no evidence contradicting the information found in the autopsy report.

Appellant's brief contends that the Confrontation Clause error was not harmless because (a) the death of the victim is an element of homicide that the Commonwealth must prove; (b) cross-examination of the examining doctor could have uncovered helpful information, such as whether the manner of A.S.'s death contributed to other forensic evidence found at the scene, could have indicated the assailant's size and strength, or explained weapons used or the location of blood in the home; (c) cross-examination could have exposed possible fraud or lack of training; and (d) appellant was unable to ask what constituted signs of drowning. Again, appellant stipulated at trial that A.S. was deceased. Nothing in the record indicates that the type of A.S.'s injuries suggested any physical attributes of the attacker. We perceive no way in which appellant's other hypothetical questions could have helped him avoid conviction. Even if, for example, cross-examination of the examining physician uncovered that she lacked the requisite training, the autopsy report was superfluous to the trial, because the bulk of information in the report was established by other evidence at trial.

Further, nothing in the report pertained to the assailant's identity, the only issue contested at trial. Indeed, some members of the jury may have considered the autopsy report to favor appellant's argument, due to the fact that the autopsy did not uncover any DNA evidence pointing to appellant. For these reasons, we hold that any error of admitting the autopsy report was harmless beyond a reasonable doubt as to appellant's convictions. See People v. Pitchford,

929 N.E.2d 655, 664 (Ill. App. Ct. 2010) (holding that the defendant "utterly failed to show any resulting prejudice" from the medical examiner's testimony about the manner of death because the manner of death was not in dispute at trial).

We must next determine whether the error was harmless as to appellant's sentence. See Zektaw v. Commonwealth, 278 Va. 127, 140, 677 S.E.2d 49, 56 (2009). At the sentencing hearing, the Commonwealth did not revisit the details of A.S.'s death, but did urge the jury to "go back and look at the picture of where [A.S.] was left, go back and remind yourself of the autopsy report." The jury fixed appellant's sentence at life imprisonment for the murder and twenty-five years for the robbery. The trial court sentenced appellant in keeping with the jury's recommendation. In doing so, the court explained:

> This case is one of the worst I've ever seen. This lady was strangled, smothered, stabbed, beaten, and she had defensive wounds that literally almost cut her hand off defending all that; and then she was put in a bathtub and drowned. I can't think of a much worse case that I've seen in at least ten years.

The other evidence in the record extensively established the violent and brutal nature of A.S.'s death, which appellant never contested. Although the autopsy report provided some information that was not elsewhere available in the record, the details of A.S.'s injuries and that her ultimate cause of death was drowning, these particulars have little impact in light of the sum of the evidence describing A.S.'s horrific death that was available to the jury even without the autopsy report. Under these circumstances, we "conclude beyond a reasonable doubt that there is no reasonable probability" that the error contributed to the severity of appellant's punishment. Id.

## II.

For these reasons, we hold that any error in admitting the autopsy report into evidence was harmless.  We therefore affirm the convictions.

<u>Affirmed.</u>