PRESENT:  Powell, C.J., Kelsey, McCullough, Chafin, Russell, and Mann, JJ., and Mims, S.J.

COMMONWEALTH OF VIRGINIA

v.  Record No. 250359

OPINION BY
JUSTICE TERESA M. CHAFIN
APRIL 23, 2026

BRIAN FAYNE

FROM THE COURT OF APPEALS OF VIRGINIA

The present case involves statements that Brian Fayne made while he was in police custody.  The Court of Appeals concluded that the police impermissibly obtained the statements at issue after Fayne requested counsel.  For the following reasons, we reverse the Court of Appeals' judgment.

I.  BACKGROUND

On December 18, 2020, police detained Fayne after a shooting that resulted in the death of C.K., who was pregnant.  Fayne had previously sold drugs to C.K. and was in a relationship with her.  Fayne was taken to the police station and placed in an interview room.

Approximately one hour and twenty minutes later, Detectives Daniel Smith and Henry Hodson entered the room.  Smith advised Fayne of his *Miranda*[1] rights, and Fayne stated that he understood them.

Smith and Hodson questioned Fayne for approximately four hours.[2]  During this time, Fayne denied any involvement in the shooting.  The detectives allowed Fayne to call his father twice.  At one point, Fayne told his father to "call Clancy," seemingly referring to an attorney.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] The interview was recorded on video. At the suppression hearing, the video recording of the interview was admitted into evidence as Commonwealth's Exhibits A-1 and A-2.

After the second call, Fayne stated that he was being advised to "lawyer up."[3] When Fayne expressed concern about potential charges, Smith explained that Fayne was facing a second-degree murder charge. Smith also explained that the charge could be elevated if the killing of a pregnant woman was intentional.

Fayne stated that he "definitely want[ed] to talk" to the detectives but did not want his father "to feel disrespected." Fayne asked for another opportunity to persuade his father. Smith again contacted Fayne's father, who again advised Fayne to wait for counsel. Fayne expressed concern about receiving a life sentence. Fayne's father responded that the detectives could not offer him a deal and that only a prosecutor could do so.

When the call ended, Smith confirmed that only a prosecutor could offer him a plea deal, which Fayne would have to earn through cooperation. Fayne then stated that he had "no reason for a lawyer now," that hiring a lawyer would be "spend[ing] $20,000 on nothing," and that a lawyer could not "help [him]." At the same time, Fayne acknowledged that when he did speak with a lawyer, the lawyer would likely advise him not to talk to the detectives.

Approximately fifteen minutes later, Fayne invoked his right to counsel, stating,

> I strongly request [a lawyer] here . . . I could easily slip up . . . and I ain't trying to do that. But I'm telling you now while you're here in front of me that that is what I want. I'm not ducking it, but at the same time, I have to protect what I'm saying.

The Commonwealth concedes that this was an unequivocal request for counsel.

---

[3] *See, e.g.*, *Townsend v. Morrison*, 2025 U.S. Dist. LEXIS 8461, at *31 (W.D. Mich. Jan. 16, 2025) (indicating via colloquy between the trial court and a defendant that to "lawyer up" means that the defendant asks to consult with an attorney in response to questioning by law enforcement); *England v. Hart*, 970 F.3d 698, 708 (6th Cir. 2020) (noting that "the detectives reminded [the appellant] that he had the right to 'lawyer up,'" and observing that the appellant "nevertheless responded that he would talk and tell what he knew").

Despite Fayne's invocation of his right to counsel, the detectives nonetheless continued questioning Fayne for approximately one hour and fifteen minutes after his invocation. The Commonwealth concedes that this conduct violated *Edwards v. Arizona,* 451 U.S. 477 (1981).

During this period, Detective Steven Carpenter entered the room. Carpenter had watched portions of the interview but was unaware that Fayne had invoked his right to counsel. He questioned Fayne about illegal drug activity, and Fayne acknowledged that he sold cocaine.

At one point, Fayne requested to speak to Carpenter alone. After Detective Smith left the room, Fayne told Carpenter that he wanted to give a statement but did not want to "fuck up" what he said. Carpenter continued to question Fayne about the shooting. Fayne again stated that if he confessed, a plea deal would not be a possibility. Carpenter stated,

> If you want me to help you, you need to start explaining something
> to me, because if not, I'm going to walk out, and there ain't going
> to be nobody else that comes back in this room.

After additional questioning, Carpenter stated that there was nothing further he could do for Fayne and left the room, closing the door behind him. Carpenter later testified that, at that point, the interview had ended. Fayne remained alone in the room.

Approximately twenty seconds later, Fayne opened the door. He asked an officer to locate Detective Smith, explaining that Carpenter had been "too aggressive" and that he was more comfortable speaking with Smith. When told that Smith might not be available, Fayne reiterated that he wished to speak to him.

Fayne then resumed discussion with Carpenter and a second officer, Sergeant Giles, indicating that he was ready to talk and wanted to resolve the matter. Giles encouraged him to explain what had happened and described the evidence. Fayne stated that he wanted Smith

3

present before he gave a confession. When Smith returned, Fayne admitted to his role in the shooting and provided details of the offense.

Fayne moved to suppress the statements that he made during the interview, arguing that the officers continued to question him after he invoked his right to counsel in violation of *Edwards*. The circuit court denied Fayne's motion to suppress, finding that while Fayne had invoked his right to counsel, he later reinitiated contact by opening the door and requesting Detective Smith. The circuit court further found that Fayne knowingly and intelligently waived his right to counsel before making additional statements.

The Court of Appeals reversed the trial court's denial of Fayne's motion to suppress. *Fayne v. Commonwealth*, 83 Va. App. 686 (2025). Relying on *Ferguson v. Commonwealth*, 52 Va. App. 324, 340 (2008), *aff'd*, 278 Va. 118 (2009), the Court of Appeals held that Fayne did not reinitiate contact because the interrogation did not cease in a manner sufficient to permit reinitiation. *Fayne*, 83 Va. App. at 700-03. The Court of Appeals further held that even if Fayne had reinitiated the discussion, he did not knowingly and intelligently waive his right to counsel. *Id.* at 703-06. This appeal followed.

## II.  ANALYSIS

This case turns on sequence. Fayne invoked his right to counsel. The police continued questioning in violation of *Edwards*. The interrogation then ended. Fayne—not the police—resumed communication. The question is whether, under those circumstances, his statements subsequent to resuming communications were admissible under *Edwards*. The Court of Appeals focused on the violation but failed to account for what followed. *Fayne*, 83 Va. App. at 700-03.

We review a circuit court's factual findings in denying a motion to suppress for clear error and its application of the law de novo. *See Spinner v. Commonwealth*, 297 Va. 384, 389

4

(2019); *Commonwealth v. Quarles*, 283 Va. 214, 220 (2012); *Zektaw v. Commonwealth*, 278 Va. 127, 134 (2009). In doing so, we view the evidence in the light most favorable to the prevailing party and consider all reasonable inferences supported by the record. *See Spinner*, 297 Va. at 389.

The Court gives deference to the trial court's factual findings, including those bearing on who initiated the communication and whether the defendant understood his rights, if supported by the evidence, and determines whether those facts establish a valid waiver under the totality of the circumstances. *See Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983); *Hilliard v. Commonwealth*, 270 Va. 42, 49 (2005); *Commonwealth v. Redmond*, 264 Va. 321, 327 (2002).

A. The Interrogation Ended Following Fayne's Invocation of Counsel

*Edwards* requires that interrogation cease once a suspect invokes the right to counsel. *Edwards*, 451 U.S. at 484-85. That rule governs the admissibility of any statements after invocation.

The Court of Appeals treated the earlier *Edwards* violation as dispositive. That interpretation, however, extends the rule beyond its proper scope. *Edwards* requires that interrogation cease; it does not impose a permanent bar on further communication between a suspect and law enforcement. *Id.*; *Bradshaw*, 462 U.S. at 1044-46. If questioning ends and the suspect later chooses to speak, the admissibility of any subsequent statements turns on reinitiation and waiver. *See Maryland v. Shatzer*, 559 U.S. 98, 103 (2010) (recognizing that *Edwards* is not a permanent bar on further interrogation after a sufficient break has occurred).

The record supports the circuit court's finding that the interrogation ended. Detective Carpenter stated that there was nothing further he could do, exited the room, and closed the door.

5

Fayne was left alone. No officer remained and no questioning continued. This was not a brief pause in an ongoing exchange; it marked the end of the interview.

That officers earlier failed to honor Fayne's invocation of his right to counsel does not change this analysis. The rule requires that questioning cease. It does not resolve the admissibility of statements made after questioning in fact ends. Once questioning stops, the focus shifts to what follows under *Edwards*.

### B. Fayne Reinitiated Communication with Law Enforcement

After a suspect invokes the right to counsel, further interrogation must cease unless the suspect reinitiates communication with law enforcement. *Edwards*, 451 U.S. at 484-85. Reinitiation requires conduct that reflects a willingness to engage in a "generalized discussion" of the investigation. *Bradshaw*, 462 U.S. at 1045.

Within seconds of being left alone, Fayne reopened communication. He opened the door and asked for Detective Smith, explaining that Carpenter had been "too aggressive" and that he was more comfortable speaking with Smith. When told that Smith might not be available, Fayne repeated that he wanted to speak with him. This request was not prompted by further police conduct. It was Fayne's decision to resume the conversation. *See id.* at 1045-46.

The Court of Appeals relied on *Ferguson v. Commonwealth*, 52 Va. App. 324 (2008), *aff'd*, 278 Va. 118 (2009), which involved a materially different sequence of events. *Fayne*, 83 Va. App. at 700-03. But *Edwards* does not turn on whether a violation occurred in the first instance; it turns on what follows—whether the interrogation ceased, whether the suspect reinitiated communication, and whether a valid waiver ensued. The premise underlying the Court of Appeals' analysis—that the initial violation continued to control the admissibility of

6

Fayne's later statements absent a meaningful cessation of questioning—is inconsistent with that framework.

In *Ferguson*, the interrogation never meaningfully stopped. The encounter remained "one continuous custodial interrogation," and the suspect's statements were inseparable from the ongoing questioning. *Commonwealth v. Ferguson*, 278 Va. 118, 126 (2009).

That distinction is significant. When questioning continues in disregard of a request for counsel, any later statement cannot fairly be attributed to the suspect's independent choice to reopen the dialogue. Without a meaningful break, there is no real opportunity for reinitiation— only a continuation of the same interrogation.

Here, the interrogation ended. The detective left the room, the door closed, and Fayne was left alone. Only then did Fayne choose to speak. That sequence—cessation of the interrogation followed by suspect-initiated communication—is what was contemplated in *Edwards* and *Bradshaw*. The Court of Appeals erred in concluding otherwise.

C. Fayne Knowingly and Intelligently Waived His Right to Counsel

When an impermissible post-invocation interrogation ends and the suspect thereafter initiates a further exchange that produces statements like the ones at issue here, those statements may be admissible if accompanied by a valid waiver, notwithstanding the initial *Edwards* violation. *King v. Commonwealth*, 243 Va. 353, 362 (1992). A waiver need not be express; it may be inferred from the suspect's words and conduct. *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979)*; King*, 243 Va. at 360. The relevant inquiry is whether the suspect understood his right to counsel and chose to relinquish it. *See Quarles*, 283 Va. at 221-22; *see also Moran v. Burbine*, 475 U.S. 412, 421 (1986).

That inquiry is distinct from general voluntariness. The question is not whether the statement was voluntary under general due process principles, but whether the suspect knowingly abandoned the right to counsel. *See Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986) (distinguishing *Miranda* waiver from broader due process voluntariness); *Quarles*, 283 Va. at 221-22 (addressing voluntariness under the totality of the circumstances).

The record supports the circuit court's finding that Fayne waived his right to counsel. Fayne was advised of his *Miranda* rights and stated that he understood them. He demonstrated awareness of his right to counsel by invoking that right. After the interview ended, Fayne chose to reopen communication, requested a different detective, and stated that he was ready to talk. He then provided a detailed account of the offense.

The record does not reflect confusion or continued coercion after the interrogation ended. Fayne's reinitiation of the conversation was a deliberate choice. *Compare Correll v. Commonwealth*, 232 Va. 454, 464 (1987) (finding valid waiver following reinitiation), *with Ferguson*, 278 Va. at 125-26 (finding no waiver where interrogation never meaningfully ceased).

The Court of Appeals effectively treated the earlier *Edwards* violation as permanently tainting everything that followed and blurred the distinction between *Miranda* waiver and general voluntariness. *See Fayne*, 83 Va. App. at 706. That is not the governing framework.

The admissibility of post-invocation statements turns on whether interrogation ceased, whether the accused reinitiated communication, and whether a valid waiver followed. *See Edwards*, 451 U.S. at 484-85; *Bradshaw*, 462 U.S. at 1045; *Butler*, 441 U.S. at 373; *King*, 243 Va. at 360. It does not turn on whether an earlier violation renders all subsequent statements inadmissible. *See Connelly*, 479 U.S. at 169-70; *Quarles*, 283 Va. at 221-22.

8

## III. CONCLUSION

Because the interrogation ceased, Fayne reinitiated communication, and he knowingly and intelligently waived his right to counsel, the circuit court did not err in denying Fayne's motion to suppress. We reverse the judgment of the Court of Appeals and reinstate the judgment of the trial court.

*Reversed and final judgment.*