COURT OF APPEALS OF VIRGINIA

Present:    Judges Kelsey, McClanahan and Haley
Argued by teleconference

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.      Record No. 2271-09-1                    JUDGE D. ARTHUR KELSEY
                                                          APRIL 13, 2010

JERMAINE S. EPPS

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Kenneth R. Melvin, Judge

Erin M. Kulpa, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on briefs), for appellant.

Sonya Weaver Roots (Weaver Law Practice, PLLC, on
brief), for appellee.


In this criminal case, the Commonwealth appeals a pretrial order granting a motion to

suppress a confession given by Jermaine S. Epps to investigators.  Based on the argument

presented by Epps at trial and on appeal, we find no legal basis for the suppression order.  We

thus reverse the order and remand the case for trial.


I.

Portsmouth police officers arrested Epps on charges of armed burglary of a bank, two

counts of robbery, two counts of use of a firearm during the commission of a robbery, and

wearing a mask in public.  Two detectives, M.A. Luck and J. Branch, interviewed Epps at the

police station.[1]  They began the interview by advising Epps of his rights under Miranda v.

Arizona, 384 U.S. 436 (1966), and confirming he understood them.  Epps did not invoke any of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The interview was filmed.  Portions were played for the trial court and transcribed by
the court reporter.  Neither party introduced into evidence, however, a copy of the video or a
prepared verbatim transcript.

his rights and instead spoke freely with the detectives for about half an hour.[2]  At this point,

Epps asked if he could "get a bond" and be released on pretrial bail.  The detectives said they had

"no control over that."  That prompted a discussion about counsel, transcribed in the

suppression-hearing transcript as follows:

| | |
|---|---|
| Defendant: | *Can I have my lawyer present?* |
| Detective Luck: | For your bond hearing? |
| Defendant: | *No, for now.* |
| [Playback of the recording was stopped.] | |
| The Court: | Stop.  What did he say? |
| Prosecutor: | He said, "*can I have my lawyer present?*" And then Detective Luck said, "for the bond hearing?" And he said, Mr. Epps, said, "*no, for now.*" |
| The Court: | Do you agree with that, Ms. Weaver? |
| Defense Counsel: | Yes, sir. |
| The Court: | Go on. |
| Defense Counsel: | *That's where we are saying he invoked his right to counsel.* |

App. 29-30 (emphasis added).  Throughout the suppression hearing, Epps's counsel focused on

the "for now" aspect of this dialogue.  She argued to the trial court:

> [Epps] asked in the course of their talking to him about an
> attorney, and they asked for I guess you would say whether he
> wanted one at that moment or, you know, for bond hearing or
> something, and *he says "for now" which meant at that particular
> time and they did not cease speaking with him at that time.  That's
> our basis for the motion to suppress . . . .*

App. at 12 (emphasis added).  After the presentation of evidence, Epps's counsel again argued

the "for now" statement was the basis for suppressing Epps's previously tendered confession:

---

[2] Epps did not challenge, either in the trial court or on appeal, the efficacy of the <u>Miranda</u> warnings or his voluntary waiver of his rights during this portion of the interview.

- 2 -

What we have in this case, he says, "can I have my lawyer present." They ask for clarification of when he wants his lawyer. He says "for now." They said, bond hearing? *He says "no, for now." So he has told them he did not want the bond hearing, he wanted his lawyer then.* They did not cease interviewing him.

\* \* \* \* \* \* \*

I think based on what you heard in the statement and what the officer said, they probably were surprised at that point that he asked the question can I have a lawyer, and then they asked basically when do you want one. *When they said for the bond hearing, he says, "no, for now." So at that point it's our contention that he unequivocally requested his attorney at that point.*

App. at 53-54 (emphasis added).

The trial court agreed with counsel's argument and granted Epps's motion to suppress. The Commonwealth filed an interlocutory appeal under Code § 19.2-398(A)(2) seeking review of the trial court's suppression order. The Commonwealth argues Epps did not unequivocally invoke his right to counsel by asking, "Can I have my lawyer present?" and then clarifying he meant "for now" instead of later at his bond hearing. See Appellant's Br. at 6, 9. In response, Epps's appellate brief repeats the same argument made in the trial court: "In this case, the defendant clearly invoked his right to counsel. The defendant initially asked the detectives 'Can I have my lawyer present?' and the detectives asked him 'For your bond hearing?' and the defendant responded 'No. For now.'" Appellee's Br. at 4.

During oral argument on appeal, the Court asked Epps's counsel if she could further clarify the position she took in the trial court on the scope of her motion to suppress. She replied Epps's "whole argument" in the trial court focused only on the question, "Can I have my lawyer present?" and clarification, "No. For now." Oral Argument Audio at 16:00 (Mar. 23, 2010). Counsel conceded she never argued in the trial court that any other statements by Epps constituted an unambiguous and unequivocal request for counsel. Id. at 17:10 to 18:02. Counsel

- 3 -

also conceded she similarly limited the appellate brief to the narrow argument made in the trial court.  Id. at 19:46.[3]

## II.

Miranda requires police officers to advise suspects in custody of their right to counsel. Edwards v. Arizona, 451 U.S. 477 (1981), requires officers to suspend their questioning when a suspect requests the assistance of counsel.  Police officers must cease the interrogation, however, "*only* [i]f the individual states that he wants an attorney."  Moran v. Burbine, 475 U.S. 412, 433 n.4 (1986) (quoting Michigan v. Mosley, 423 U.S. 96, 104 n.10 (1975), in turn quoting Miranda, 384 U.S. at 474) (emphasis and alteration in original); see also Davis v. United States, 512 U.S. 452, 459 (1994).  A suspect *asking* if he could have an attorney, should have an attorney, might have an attorney, or the like all involve questions *about* counsel — not requests *for* counsel. Questions about counsel can be answered by police officers; requests for counsel must simply be obeyed.

---

[3] Just after the "No.  For now." remark, the detective asked Epps directly:  "Do you want your lawyer here?"  Epps equivocated:  "See, I ain't want to jump the gun but I don't want to say nothing unless my lawyer here and you-all be like, well, that's all right, you ain't got to say nothing anyway.  I don't want her [Epps's girlfriend] in no trouble."  App. 31, 43.  Detective Branch then restated the Miranda warnings:  "You can have your lawyer here, of course.  It's your right.  Or you can elect to talk and just tell us what happened.  That's your choice."  App. 31-32, 44.  Epps replied:  "But *if I say* I want my lawyer here, you-all going to think I am trying to be a smart ass and all that."  App. 32, 44 (emphasis added).  After the detectives clarified that what they thought was irrelevant, Epps volunteered:  "Bank robbery.  What you-all want to know?"  App. 32.

At oral argument on appeal, the Court raised *sua sponte* whether these additional statements by Epps could be construed as an unambiguous request for counsel and asked whether, even if so, Epps later reinitiated a dialogue with the detectives.  After conceding she had never raised either point in the proceedings, counsel replied, "if the Court be willing to entertain that, yes I would include that as well."  Oral Argument Audio at 20:00.  The Commonwealth objected and called upon us to limit our analysis to the issues raised below and addressed in the appellate briefs.  Given our reluctance to assume "the role of advocate," Johnson v. Commonwealth, 45 Va. App. 113, 116, 609 S.E.2d 58, 59 (2005), we will address the issues in the manner framed by the parties.

To be effective, "the invocation of the right to counsel must be clear, unambiguous, and unequivocal." Zektaw v. Commonwealth, 278 Va. 127, 136, 677 S.E.2d 49, 53 (2009) (citation omitted). "If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." Davis, 512 U.S. at 461-62. It is not enough for a suspect to make "a statement that *might* be a request for an attorney" because police officers "may continue questioning until and unless the suspect *clearly* requests an attorney." Id. at 461 (first emphasis in original). An "ambiguous or equivocal reference to an attorney" requires police officers to speculate about the suspect's true intentions "with the threat of suppression if they guess wrong." Id. at 460-61.

Among the questions and statements that do *not* constitute clear, unambiguous, and unequivocal requests for counsel are:

- "Can I speak to my lawyer? I can't even talk to [a] lawyer before I make any kinds of comments or anything?" Commonwealth v. Redmond, 264 Va. 321, 330, 568 S.E.2d 695, 700 (2002).

- "Can I have someone else present too, I mean just for my safety, like a lawyer like y'all just said?" Commonwealth v. Hilliard, 270 Va. 42, 51, 613 S.E.2d 579, 585 (2005).

- "I'll be honest with you, I'm scared to say anything without talking to a lawyer." Midkiff v. Commonwealth, 250 Va. 262, 265, 267, 462 S.E.2d 112, 114, 115 (1995).

- "Maybe I should talk to a lawyer." Davis, 512 U.S. at 455.

- "Do you think I need an attorney here?" Mueller v. Commonwealth, 244 Va. 386, 396, 422 S.E.2d 380, 387 (1992).

- "You did say I could have an attorney if I wanted one?" Eaton v. Commonwealth, 240 Va. 236, 250, 252, 397 S.E.2d 385, 393, 395 (1990).

- "Didn't you say I have the right to an attorney?" Poyner v. Commonwealth, 229 Va. 401, 410, 329 S.E.2d 815, 823 (1985).

- A statement by a suspect that "he felt like he might want to talk to a lawyer." Bunch v. Commonwealth, 225 Va. 423, 430, 304 S.E.2d 271, 275 (1983).

- ▪ "I think I need a lawyer." Burket v. Angelone, 208 F.3d 172, 198 (4th Cir. 2000) (aff'g on habeas review Burket v. Commonwealth, 248 Va. 596, 450 S.E.2d 127 (1994)).

In this case, Epps argues he unambiguously and unequivocally requested counsel by *asking*, "Can I have my lawyer present?" and then *clarifying* he meant "for now" instead of later at his bond hearing. The trial court agreed with this argument; we do not. Epps simply asked a question. His "for now" remark merely qualified the timing of his question, as in "Can I have my lawyer present for now?" On its face, this is not a request, demand, or assertion. See, e.g., Gutierrez v. State, 150 S.W.3d 827, 832 (Tex. App. 2004) ("Can I have [my lawyer] present now?"). It is, instead, a question virtually indistinguishable from similar questions found inadequate under settled precedents.[4]

Epps acknowledges these precedents but argues they have no persuasive force here because Detective Branch's testimony at the suppression hearing could be interpreted to suggest he subjectively understood the "for now" qualification to be an express request for counsel. Though we are skeptical of this interpretation of Detective Branch's testimony[5] — particularly given Detective Luck's contrary view[6] — the constitutional "test for determining whether the accused invoked the right to counsel is an objective one." Medley v. Commonwealth, 44 Va. App. 19, 31, 602 S.E.2d 411, 417 (2004) (*en banc*) (quoting McDaniel v. Commonwealth,

---

[4] Because Epps's counsel did not do so at trial, nor does she on appeal, we likewise do not analyze whether Epps's other statements merely expressed his "reservation[s] about the wisdom of continuing the interrogation without consulting a lawyer," Midkiff, 250 Va. at 267, 462 S.E.2d at 115, or could be construed to be an unambiguous, unequivocal request for counsel. For the same reason, we do not address whether Epps reinitiated a dialogue with the detectives prior to making his incriminating remarks. See *supra* at 4 n.3.

[5] See App. 41 ("No. I asked him. I told him again. He never answered.").

[6] See App. 45 ("I was still unclear. That's why we gave him the opportunity and explained to him it was his right and kept asking him if he wanted his lawyer."); id. ("Q. And did he ever answer whether he wanted the attorney or not to any of your questions? A. No.").

30 Va. App. 602, 605, 518 S.E.2d 851, 853 (1999)).  Absent a dispute about what was said and how, we apply "de novo review of the legal issue whether [a suspect's] words, taken in context, were sufficient to invoke his right to counsel."  Zektaw, 278 Va. at 135, 677 S.E.2d at 53 (quoting Hilliard, 270 Va. at 50, 613 S.E.2d at 584).

III.

Because the trial court erred by granting Epps's motion to suppress, we reverse the suppression order and remand for trial.

Reversed and remanded.