COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley,
          Petty, Beales, Powell and Alston
Argued at Richmond, Virginia


ROGER LEE STEVENS, S/K/A
  ROGER LEE STEPHENS
                                                          OPINION BY
v.      Record No. 0266-09-3                     JUDGE WILLIAM G. PETTY
                                                        FEBRUARY 1, 2011
COMMONWEALTH OF VIRGINIA

                        UPON REHEARING EN BANC

              FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                          Charles J. Strauss, Judge

          Larry Gott for appellant.

          Josephine F. Whalen, Assistant Attorney General II (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


        Roger Lee Stevens appeals from his convictions for robbery, conspiracy to commit

robbery, malicious bodily injury, two counts of murder, and several counts of using a firearm in

the commission of various felonies.  Before a panel of this Court, Stevens argued that the trial

court erroneously denied his motion to suppress incriminating statements he made to police

during a custodial interrogation after he requested counsel.  Stevens contended that the police

should have ceased questioning him because he claims to have unambiguously and

unequivocally invoked his right to have counsel present during custodial interrogation as set

forth in Miranda v. Arizona, 384 U.S. 436 (1966), and Edwards v. Arizona, 451 U.S. 477 (1981).

        In an unpublished opinion, a divided panel of this Court reversed Stevens' convictions

and remanded for a new trial.  See Stevens v. Commonwealth, No. 0266-09-3, 2010 Va. App.

LEXIS 244, at *18 (Va. Ct. App. June 22, 2010).  We subsequently granted the

Commonwealth's petition for rehearing en banc and stayed the panel decision.[1] On rehearing en banc, we hold that Stevens' statement was ambiguous because the circumstances leading up to Stevens' statement made it unclear whether Stevens had requested the presence of an attorney during custodial interrogation, or whether he had simply expressed his desire to have an attorney appointed to represent him at trial. Because of this ambiguity, we conclude that the police were permitted to ask Stevens limited questions solely for the purpose of clarifying the statement. Accordingly, we hold that the police did not violate Stevens' right to counsel under Miranda, and, therefore, we affirm his convictions.

## I. BACKGROUND

On July 22, 2008, the appellant, Roger Lee Stevens, was arrested for his involvement in a deadly shooting that occurred during a drug transaction. After his arrest, Investigators Chaney and Nicholson of the Pittsylvania County Sheriff's Department questioned Stevens at a police station in Chatham, Virginia. They began the interrogation by carefully reading Stevens his Miranda rights. Stevens waived those rights[2] and answered the investigators' questions for approximately two hours. During this time, Stevens never asked for counsel. After this session concluded, Stevens was transferred to an unidentified jail; he did not remain in Chatham because of a need to keep him separate from another person in custody at that location.

Apparently, the magistrate before whom Stevens had appeared during the night had erroneously ordered Stevens to be transported to the juvenile and domestic relations district court

---

[1] By granting the petition for rehearing en banc, we vacated the previous panel decision. Logan v. Commonwealth, 47 Va. App. 168, 170, 622 S.E.2d 771, 772 (2005).

[2] Although Stevens would not sign a waiver form, Stevens verbally agreed to waive each of his Miranda rights to the investigators. The parties do not dispute that Stevens validly waived his Miranda rights during this first interrogation.

for his original appearance and appointment of counsel.[3]  Based on the magistrate's order, authorities transferred Stevens to a holding cell at that court even though the proper court for this advisement was the general district court, which was not sitting that day.  Because of this mix-up, the advisement was continued until the next day that the general district court was to sit.

When he arrived for work that morning, Investigator Chaney learned that Stevens wanted to talk with him again.  Accordingly, Chaney went to the holding cell and engaged in a "basic conversation" with Stevens.  Stevens asked Chaney if he could leave the cell to see his child at home.  Chaney explained that Stevens could not leave because he was in police custody for several serious crimes.  He further explained that he would come visit Stevens later to talk with him some more.

Later that day, Chaney and Nicholson had Stevens returned to the police department so they could speak with him further.  Their conversation began as follows[4]:

> Chaney:  You wanna, you want to talk to us some more?
>
> Stevens:  Ya'll want to talk to me or something?
>
> Chaney:  Yeah.  You want to talk to us?
>
> Stevens:  Ya'll want to talk to me?  I ain't doing nothing [inaudible] sitting.

---

[3] The parties have, at various times, referred to this proceeding as an advisement or arraignment.  Clearly, the proceeding was Stevens' initial appearance before a court not of record for purposes of advising him of his right to bail and right to counsel and for appointment of counsel if appropriate.  Code §§ 19.2-158, 19.2-159.  For purposes of this opinion, we will refer to this proceeding as an advisement.

[4] It is important to note that there is no transcript of this conversation.  Rather, a video recording was introduced at trial.  Because the trial court was able to view the conversation, it could consider not just the words spoken, but also the inflection, body language, and tone of voice of Stevens, Chaney, and Nicholson.  Having watched the video, we note that, although the written words suggest a deliberate and sequential conversation, much of the quoted dialogue was a fast-paced exchange.  The entire time lapse from the beginning of Stevens' explicit request for a lawyer until the end of his comment "that's what I thought they brought me up here for today" was approximately four seconds.

Chaney: Well reason we ask is cause we brought you back over that, this morning you asked for me, and we brought you back over here the reason I'm asking you is because your rights still apply. You still understand your rights?

Stevens: I have the right to remain silent.

Chaney: Everything that I read you last night, do you still understand your rights?

Stevens: Mm-hmm.

Chaney: You can have a lawyer present if you want one.

Stevens: I want, that's what I need. I want to know what's, you know what I'm saying.

Chaney: You can stop answering at any time.

Stevens: That's what I want, a lawyer, man.

Chaney: You do want a lawyer.

Stevens: I mean, that's what I thought they brought me up here for today.

Nicholson: Well they gonna appoint you a lawyer. I mean you gonna get a lawyer.

Chaney: The question is do you want a lawyer before you talk to us again or are you willing to talk to us?

Stevens: I mean I'll listen to ya but you already said if I could stop if I wanted.

Chaney: Stop answering at any time you want to.

Stevens: I'll listen to what you got to say. If you want—if I say something—if I feel I don't want to say no more y'all done told me I can stop.

Nicholson: Yes sir.

Chaney: Stop anytime you want.
Nicholson: No problem at all with that.

Chaney: All you got to say is I don't want to say—I don't want to talk to you no more. That's all you gotta say.

- 4 -

After this exchange, Stevens made incriminating statements to Chaney and Nicholson, which he later sought to suppress. In support of his motion to suppress, Stevens argued that he unambiguously and unequivocally invoked his Fifth Amendment right to have counsel present during questioning, and thus all further questioning should have ended immediately. In contrast, the Commonwealth argued that Investigators Chaney and Nicholson reasonably construed Stevens' statement as ambiguous in light of the full circumstances surrounding Stevens' aborted advisement and subsequent detention. Thus, the Commonwealth contended that the investigators were permitted to clarify the ambiguity. The trial court denied Stevens' motion and admitted the incriminating statements made to police. Stevens was subsequently convicted of numerous crimes. This appeal followed.

## II. ANALYSIS

As he did before the trial court, Stevens argues on appeal that he made an unambiguous and unequivocal request to have counsel present during custodial interrogation. Accordingly, he contends that police questioning should have immediately ceased after he said, "That's what I want, a lawyer, man."[5] We disagree.

We view the facts "in the light most favorable to the Commonwealth," the prevailing party below, Carter v. Commonwealth, 280 Va. 100, 104, 694 S.E.2d 590, 593 (2010), and grant it "all inferences reasonably deducible therefrom," Commonwealth v. Jenkins, 255 Va. 516, 521, 499 S.E.2d 263, 265 (1998). However, whether a defendant invoked his right to have counsel present during custodial interrogation presents a mixed question of law and fact. Commonwealth v. Hilliard, 270 Va. 42, 49, 613 S.E.2d 579, 584 (2005). Hence, "'the determination of what [the defendant] actually said is a question of fact we review only for clear error,'" but "'[w]hether

_____

[5] Stevens' position, as crystallized during oral argument, was that his subsequent statements became inadmissible the moment Investigator Chaney said, "You do want a lawyer."

those words are sufficient to invoke a right to counsel is a legal determination that we review de novo.'" Commonwealth v. Redmond, 264 Va. 321, 327, 568 S.E.2d 695, 698 (2002) (quoting United States v. Uribe-Galindo, 990 F.2d 522, 523 (10th Cir. 1993)).

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To prevent such compulsion, the United States Supreme Court has "established a number of prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation, including the right to have counsel present" during custodial interrogation. McNeil v. Wisconsin, 501 U.S. 171, 176 (1991) (quoting Miranda, 384 U.S. at 467); see also Edwards, 451 U.S. at 485-86 ("The Fifth Amendment right identified in Miranda is the right to have counsel present at any custodial interrogation."). Thus, as the Supreme Court has recognized, "to have *counsel present* during a custodial interrogation is an axiom of American law." Zektaw v. Commonwealth, 278 Va. 127, 135, 677 S.E.2d 49, 53 (2009) (emphasis added).

Once an accused requests to have counsel present during custodial interrogation, the accused "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-85. Thus, the police "'may not reinterrogate an accused in custody if he has *clearly* asserted [this] right to counsel.'" Arizona v. Roberson, 486 U.S. 675, 680 (1988) (emphasis added) (quoting Edwards, 451 U.S. at 485). However, nothing in Edwards prevents police from questioning a suspect who does "not wish to have *a lawyer present*" during questioning. Davis v. United States, 512 U.S. 452, 460 (1994) (emphasis added).

It is not always clear, however, whether a suspect has invoked his right to have counsel present during custodial interrogation, and thus has asked for "the particular sort of lawyerly

assistance that is the subject of <u>Miranda</u>," <u>McNeil</u>, 501 U.S. at 178, or whether he has asked for counsel for some other purpose.  For instance, a suspect may seek the advice of counsel regarding preliminary police interaction, but not for the purpose of receiving counsel during custodial interrogation.  <u>See</u> <u>United States v. Lagrone</u>, 43 F.3d 332, 333, 337 (7th Cir. 1994) (holding that a suspect's request for counsel to advise him on whether he should consent to a police search, pursuant to the Indiana Constitution, did not invoke his <u>Miranda</u> right to counsel during a subsequent custodial interrogation).  In fact, a suspect may even request the presence of counsel during custodial interrogation on a limited basis that still permits some police questioning.  <u>See</u> <u>Connecticut v. Barrett</u>, 479 U.S. 523, 525-26 (1987) (holding that a suspect may invoke his <u>Miranda</u> right to counsel only with respect to written statements, while still permitting verbal statements without qualification).  Further, a suspect may also validly choose to forego the presence of counsel during custodial interrogation and instead choose simply to have an attorney for formal proceedings before a court, <u>United States v. Gouveia</u>, 467 U.S. 180, 190 (1984), or he may even choose to proceed without an attorney at all, <u>Faretta v. California</u>, 422 U.S. 806, 813-14 (1975).  Given the range of options available to an accused, it follows that "'preserving the integrity of the accused's *choice* to communicate with police only through counsel is the essence'" of the Court's decisions affording the accused with a right to counsel in those circumstances.  <u>Minnick v. Mississippi</u>, 498 U.S. 146, 153 (1990) (emphasis added) (quoting <u>Patterson v. Illinois</u>, 487 U.S. 285, 291 (1988)); <u>see also</u> <u>Barrett</u>, 479 U.S. at 528 ("The fundamental purpose of the Court's decision in <u>Miranda</u> was 'to assure that *the individual's right to choose* between speech and silence remains unfettered throughout the interrogation process.'" (emphasis in original) (quoting <u>Miranda</u>, 384 U.S. at 469)).[6]

_____

[6] While we are well aware that the right to counsel and the right to remain silent during custodial interrogation are two distinct rights under <u>Miranda</u>, we also recognize that the legal issues surrounding those two rights in particular are very similar, if not the same.  <u>See</u> <u>Berghuis</u>

Finally, while we recognize that "a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the Miranda warnings," Montejo v. Louisiana, 129 S. Ct. 2079, 2090 (2009), where we are called upon to determine whether a reasonable police officer would have considered such a request ambiguous or equivocal, we must be mindful that

> [s]uppression of evidence, however, has always been our last resort, not our first impulse. The exclusionary rule generates "substantial social costs," which sometimes include setting the guilty free and the dangerous at large. [The United States Supreme Court has] therefore been "cautio[us] against expanding" it, and "[has] repeatedly emphasized that the rule's 'costly toll' upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application." [The Court has] rejected "[i]ndiscriminate application" of the rule, and [has] held it to be applicable only "where its remedial objectives are thought most efficaciously served,"—that is, "where its deterrence benefits outweigh its 'substantial social costs.'"

Hudson v. Michigan, 547 U.S. 586, 591 (2006) (some alterations in original) (citations omitted).

In light of these important considerations, we are now faced with how to evaluate a suspect's statement to police regarding his desire for counsel. Obviously, to invoke the Miranda right to counsel "'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" Davis, 512 U.S. at 459 (quoting McNeil, 501 U.S. at 178). But, if the statement is "ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect [making the statement] *might* be" asking for the presence of an attorney during custodial interrogation, the officer may ask questions to clarify the statement. Id. (emphasis in original) (citing McNeil, 501 U.S. at 178; Edwards, 451 U.S. at 485). In fact, "when a suspect makes an ambiguous or

---

v. Thompkins, 130 S. Ct. 2250, 2260 (2010) (explaining that "there is no principled reason to adopt different standards for determining when an accused has invoked the Miranda right to remain silent and the Miranda right to counsel").

- 8 -

equivocal statement, it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney" present. Id. at 461.

The Supreme Court has examined on many occasions whether a particular statement made by a suspect unambiguously and unequivocally invoked the suspect's right to have counsel present during custodial interrogation. Oftentimes, it has viewed a defendant's statement as seeking mere clarification of his Miranda right to counsel, and not as a clear invocation of that right. See, e.g., Hilliard, 270 Va. at 51, 613 S.E.2d at 585 (holding that the statement, "Can I have someone else present too, I mean just for my safety, like a lawyer like y'all just said?," was not a clear assertion of the defendant's Miranda right to counsel); Redmond, 264 Va. at 330, 568 S.E.2d at 700 (holding that the statement, "Can I speak to my lawyer? I can't even talk to [a] lawyer before I make any kinds of comments or anything?," was not a clear request for the presence of counsel during custodial interrogation); Midkiff v. Commonwealth, 250 Va. 262, 265-67, 462 S.E.2d 112, 114-15 (1995) (holding that "[t]he statement, 'I'm scared to say anything without talking to a lawyer,' . . . does not clearly and unambiguously communicate a desire to invoke" a Fifth Amendment right to counsel). Yet other times, the Court has viewed certain statements as clear requests for counsel during custodial interrogation. For instance, in Zektaw, the Supreme Court held that the statement, "I'd really like to talk to a lawyer because this—oh my God, oh my Jesus, why?," was an unambiguous and unequivocal invocation of the defendant's right to counsel under Miranda. Zektaw, 278 Va. at 131-32, 138-39, 677 S.E.2d at 51, 55. The Court similarly held in Commonwealth v. Ferguson, 278 Va. 118, 121, 126, 677 S.E.2d 45, 46, 49 (2009), that the statement, "Nah, I want a lawyer, you know what I'm saying?," was a clear, unambiguous, and unequivocal request for counsel during custodial interrogation.

Like the statements in <u>Zektaw</u> and <u>Ferguson</u>, Stevens' statement requesting counsel was certainly unequivocal in content; however, equivocation and ambiguity are two distinct concepts that each warrant our review. Unlike equivocation, ambiguity arises from the circumstances leading up to the statement, along with the statement itself, rather than the words of the statement alone. In <u>Zektaw</u> and <u>Ferguson</u>, the Supreme Court was presented only with statements made under traditional circumstances—that is, statements made by a defendant during police questioning with little or no other relevant circumstances leading up to the questioning itself. See <u>Zektaw</u>, 278 Va. at 131-32, 677 S.E.2d at 51; <u>Ferguson</u>, 278 Va. at 121-22, 677 S.E.2d at 46-47.

Accordingly, neither of those cases dealt with atypical circumstances leading up to a defendant's request for counsel—circumstances that might have suggested the defendant was not requesting to have counsel present during police questioning, but rather, that suggested the defendant was seeking counsel for some other purpose. Such circumstances could render a suspect's statement *ambiguous*, even if the statement's words are unequivocal. Because we are now presented with this issue, we must evaluate whether the "circumstances leading up to the request for counsel would render it ambiguous," <u>Smith v. Illinois</u>, 469 U.S. 91, 98 (1984), such that the suspect failed to "'articulate *his desire to have counsel present* sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney,'" <u>Redmond</u>, 264 Va. at 328-29, 568 S.E.2d at 699 (emphasis added) (quoting <u>Davis</u>, 512 U.S. at 459).[7]

---

[7] As the Kansas Supreme Court has held, "The timing as well as the content and context of a reference to counsel may help determine whether there has been an unambiguous assertion of the right to have the assistance of an attorney in dealing with a custodial interrogation by the police." <u>State v. Appleby</u>, 221 P.3d 525, 548 (Kan. 2009).

When we so evaluate the specific circumstances of this case, we conclude that Investigators Chaney and Nicholson, as police officers familiar with those circumstances, could reasonably have considered Stevens' request to be ambiguous—that it was just as likely Stevens was referring to his desire to have an attorney appointed to represent him before the court as it was that he was requesting an attorney to be present before further questioning. Stevens had been arrested and interrogated by Nicholson and Chaney the day before he gave his statements to them. Before the first interrogation began, Nicholson and Chaney advised Stevens of his Miranda rights, and he waived those rights. During that first interrogation, Stevens never requested to speak to an attorney, and thus he never expressed a desire to have an attorney present during the first interrogation. Therefore, it was reasonable for the investigators to infer that they had built a rapport with Stevens and that he was willing to speak with them without an attorney present.

Thereafter, Stevens was transferred to an unknown jail, but the next day, he found himself back in a holding cell in Chatham, near Chaney and Nicholson's police station. Chaney and Nicholson did not instigate their second meeting with Stevens; rather, Stevens specifically asked to speak with Chaney.[8] Stevens expressed an interest in being released so he could see his young son. Chaney later had Stevens brought over to the police station to talk with him and Investigator Nicholson. At that time, both Chaney and Nicholson understood that Stevens had

---

[8] The dissent strongly emphasizes that, in its view, Chaney and Nicholson initiated a third, distinct meeting with Stevens. However, when we examine the facts in the light most favorable to the Commonwealth, we conclude that the material exchange arose from a continuation of the second meeting that had been instigated by Stevens. Chaney explained this when he said, "[T]his morning you asked for me, and we brought you back over here," i.e., as a result of Stevens' request. Even if, however, we accepted the dissent's characterization of the meeting, the fact remains that Chaney and Nicholson went into the meeting knowing about the aborted advisement. As we explain below, that aborted advisement serves as the backbone of the unique circumstances that inserted ambiguity into Stevens' statement.

been transferred for advisement and that once Stevens made an appearance in court—whenever that might be—the court would appoint him an attorney.[9]

Thus, when Stevens said, "That's what I want, a lawyer, man," explaining "that's what I thought they brought me up here for today,"[10] the context in which the statement was made interjected some ambiguity into the statement itself. There is surely nothing unreasonable about the officer's uncertainty as to whether Stevens wanted counsel present for custodial

_____

[9] At oral argument, Stevens argued that no evidence suggested that the investigators were actually aware of the aborted advisement or that Stevens was expecting the imminent appointment of counsel. However, because we must view the evidence in the light most favorable to the Commonwealth and grant it all reasonable inferences from that evidence, Jenkins, 255 Va. at 521, 499 S.E.2d at 265, we must presume that the investigators were aware of these peculiar circumstances. When asked if he knew why Stevens had been returned to Chatham, Investigator Chaney testified that he "figured he was, he was coming to be arraigned." He also testified that he was "pretty sure [he] had broached that subject [of whether Stevens had been appointed a lawyer] but [he couldn't] say for sure." He further acknowledged that Stevens did not, at that point, tell Chaney that he had been appointed a lawyer. For that second meeting, the investigators met Stevens at a holding cell in the juvenile and domestic relations district court, and therefore the trial court could reasonably infer that they understood that Stevens had been brought to the wrong location. More notably, during the second meeting, Nicholson explained that a lawyer would be appointed for Stevens, and then Chaney asked, "The question is do you want a lawyer before you talk to us again or are you willing to talk to us?" Thus, by their words and actions, the investigators clearly indicated that they understood the peculiar circumstances before them when they approached Stevens for the second time.

[10] Because of the trial court's position as fact-finder, we must defer to its judgment regarding the nature of the exchange and the "statement" to be evaluated as memorialized on video. Given Stevens' and the investigators' mannerisms, along with the disjointed nature of the colloquy, the trial court reasonably viewed Stevens' statement as a whole—not merely considering the first part, as Stevens asks us to do. Although Investigator Chaney interjected a statement of surprise—one he characterized as a comment, not a question—by quickly exclaiming, "You do want a lawyer," that did not affect the unity of the statement made by Stevens, nor was Chaney's interjected statement of surprise impermissible interrogation. In fact, not even "'subtle compulsion'" amounts to impermissible interrogation, Rhode Island v. Innis, 446 U.S. 291, 303 (1980), which goes beyond the interjected statement of surprise here.
    Further, we do not view Chaney's single comment recognizing Stevens' request for an attorney as even approaching the improper "continued police questioning" presented by Smith, 469 U.S. at 91-93. There, "[t]he interrogation . . . bore a substantial similarity to the one condemned in Edwards v. Arizona, where the accused after requesting counsel was told that 'he had' to talk to his interrogators." Id. at 99 n.8 (quoting Edwards, 451 U.S. at 479). As the Court explained, "It was precisely such '[badgering]' that the Edwards safeguard was designed to prevent." Id. (alteration in original) (citing Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983)).

interrogation, or whether he wanted counsel for some other purpose—specifically, to represent him at trial.[11] Further, since Stevens had not previously requested the presence of counsel, and since Stevens had instigated the second meeting, Chaney and Nicholson could have reasonably wondered whether Stevens wanted a lawyer present before he talked to them, or whether he wanted a lawyer to aid him with adversarial judicial proceedings. Therefore, under the facts of this case, we hold that the investigators could have reasonably viewed Stevens' statement as ambiguous, and thus they were permitted to ask Stevens clarifying questions when he made that objectively ambiguous statement.[12]

We are mindful that the judicially crafted rule of Miranda and Edwards "is justified only by reference to its prophylactic purpose." Maryland v. Shatzer, 130 S. Ct. 1213, 1220 (2010). Its purpose is to preserve "'the integrity of an accused's choice to communicate with police only through counsel.'" Texas v. Cobb, 532 U.S. 162, 175 (2001) (Kennedy, J., concurring) (quoting Patterson v. Illinois, 487 U.S. 285, 291 (1988)); see also Shatzer, 130 S. Ct. at 1220 (describing the preservation of the accused's choice as "the fundamental purpose" of the Miranda-Edwards rule). Thus, the rule does not bar "'an accused from making an *initial* election as to whether he

---

[11] Although we recognize that we view these facts under an objective standard, we note that when Chaney was asked whether he perceived Stevens' statement as a request for a lawyer to help him with court proceedings and bond hearings, or a request to have a lawyer present for questioning, Chaney responded, "I wasn't sure. That's why I was trying to clarify."

[12] The dissent observes that the statement occurred in the context of a custodial interrogation, and thus it reasons that only an exploration of the immediate circumstances surrounding that custodial interrogation is warranted. We agree with the dissent that the exchange occurred in the context of a custodial interrogation. If we thought otherwise, we would not need to analyze whether Stevens' statement was ambiguous, since that question arises only when a defendant could have conceivably requested the presence of counsel during custodial interrogation. See Davis, 512 U.S. at 459. Accordingly, even in the context of custodial interrogation, ambiguity in a suspect's statement may arise. See id. To determine what circumstances may make the statement ambiguous, we see no reason to restrict our examination to only those circumstances that have happened mere seconds or minutes before. A reasonable police officer could certainly look beyond the immediate circumstances to determine how to react to a given situation and interpret a particular statement from a suspect.

will face the State's officers during questioning with the aid of counsel, or go it alone.'" Cobb, 532 U.S. at 175 (Kennedy, J., concurring) (emphasis in original) (quoting Patterson, 487 U.S. at 291). Rather, it permits the accused to make the choice that he believes is best; therefore, if the accused elects to go it alone, we should not exclude his subsequent statements at trial. Id.; see Davis, 512 U.S. at 459.[13]

Since the police must respect and act upon a suspect's choice, we will suppress a statement made outside of an attorney's presence "only if a reasonable officer should have been *certain* that the suspect expressed" the unambiguous and unequivocal election of his right to counsel during custodial interrogation. Cobb, 532 U.S. at 176 (Kennedy, J., concurring) (emphasis added) (citing Davis, 512 U.S. at 459). As we have explained, a reasonable police officer would not necessarily have had such certainty in this case.

As we have noted, when police officers are confronted with factual circumstances leading up to "a [suspect's] reference to counsel that [is] insufficiently clear to invoke the Edwards prohibition to further questioning," Davis, 512 U.S. at 454, "it will often be good police practice for the interviewing officers to clarify whether or not [the suspect] actually wants an attorney" present, id. at 461. Investigators Chaney and Nicholson followed this "good police practice" when they explained to Stevens that a lawyer would be appointed to represent him when he appeared in court, and then asked, "The question is do you want a lawyer before you talk to us again or are you willing to talk to us?" They merely clarified his ambiguous statement, which

---

[13] If police officers questioning a suspect "reasonably do not know whether or not the suspect wants a lawyer, a rule requiring the immediate cessation of questioning 'would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity.'" Davis, 512 U.S. at 459 (quoting Michigan v. Mosley, 423 U.S. 96, 102 (1975)). Such a rule "would needlessly prevent the police from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present." Id.

was both the legally allowable and legally prudent response to that statement. Thus, the investigators' behavior was appropriate here.

## III. CONCLUSION

For the foregoing reasons, we conclude that the full circumstances leading up to Stevens' request for counsel rendered Stevens' statement ambiguous. A reasonable police officer under the circumstances could have reasonably wondered whether Stevens had invoked his right to have counsel present during custodial interrogation, or whether he had invoked a right to counsel for some other purpose. Thus, the police were permitted to clarify the request. Therefore, we affirm.

<u>Affirmed.</u>

Elder, J., with whom Felton, C.J., Frank and Alston, JJ., join, dissenting.

I agree generally with the majority's recitation of the applicable legal principles as far as they go, but I believe the majority overlooks some of the undisputed facts in the record and also fails to apply an important legal principle to those facts. The majority concludes Investigators Chaney and Nicholson "merely clarified [appellant's] ambiguous statement [concerning his desire for a lawyer], which was both the *legally allowable* and *legally prudent* response to that statement." See supra at 14-15 (emphases added). Although it may have been *prudent* for the detectives to continue questioning appellant if they hoped to elicit an incriminating confession from an unrepresented defendant, I would hold their doing so was not, in fact, *legally allowable*. Appellant's statement, "That's what I want, a lawyer, man," was not remotely ambiguous, either in the abstract or in the context in which it was uttered in this case. To the contrary, it constituted an unequivocal invocation of appellant's Fifth Amendment right to have counsel present during the custodial interrogation appellant was about to undergo. Accordingly, under settled principles, the investigators were required to cease their interrogation of appellant immediately, and the confession they elicited during the uncounseled interrogation that followed violated appellant's Fifth Amendment rights.

The right under the Fifth Amendment of the United States Constitution "to have counsel present during a custodial interrogation is an axiom of American law expressed in Miranda v. Arizona, 384 U.S. 436 (1966)[,] and its progeny." Zektaw v. Commonwealth, 278 Va. 127, 135, 677 S.E.2d 49, 53 (2009). "[T]he United States Supreme Court [has] established that '[i]f the individual states . . . he wants an attorney, the interrogation must cease until an attorney is present,'" Commonwealth v. Ferguson, 278 Va. 118, 123, 677 S.E.2d 45, 48 (2009) (quoting Miranda, 384 U.S. at 474), or until "the suspect reinitiates the interrogation," Commonwealth v. Hilliard, 270 Va. 42, 49, 613 S.E.2d 579, 584 (2005) (citing Davis v. United States, 512 U.S.

- 16 -

452, 458 (1994); Edwards v. Arizona, 451 U.S. 477, 484-85 (1981)). See generally Michigan v. Mosley, 423 U.S. 96, 104 (1975) (holding police should "*scrupulously*" honor a request for counsel (emphasis added)).

Determining whether a suspect actually invoked his right to counsel under the Fifth Amendment involves an objective inquiry. Davis, 512 U.S. at 458-59. To invoke this right, a suspect must state his desire to have counsel present with sufficient clarity that a reasonable police officer under the circumstances would understand the statement to be a request for counsel.[14] Id. If a suspect's reference to an attorney is either ambiguous or equivocal, such that a reasonable officer under the circumstances would only have understood that the suspect *might* be invoking his right to counsel, the officer is not required to stop questioning the suspect. Id. at 459, 461. In the case of an ambiguous statement, an officer may ask questions "to clarify whether [the suspect] actually wants an attorney." Commonwealth v. Redmond, 264 Va. 321, 330, 568 S.E.2d 695, 700 (2002). However, where the request is clear, subsequent dialog is inappropriate, and "an accused's subsequent statements are not relevant to the question whether he invoked his right to counsel. A statement either asserts or fails to assert an accused's right to counsel." Id. at 327, 568 S.E.2d at 698 (citing Smith v. Illinois, 469 U.S. 91, 97-98 (1984) (per

---

[14] Quoting a concurring opinion in a United States Supreme Court case, the majority indicates suppression is appropriate "'only if a reasonable officer should have been *certain* that the suspect expressed' the unambiguous and unequivocal election of his right to counsel during custodial interrogation." See supra at 14 (quoting "[Texas v.] Cobb, 532 U.S. [162,] 176 [(2001)] (Kennedy, J., concurring) (emphasis added) (citing Davis, 512 U.S. at 459)"). The case upon which the concurring opinion of Justice Kennedy relies, however, requires only that the suspect "must unambiguously request counsel" and provides that as long as he "articulate[s] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney," he "need not 'speak with the discrimination of an Oxford don.'" Davis, 512 U.S. at 459 (quoting id. at 476 (Souter, J., concurring in the judgment)). To the extent the majority's requirement of proof that a reasonable officer must be "certain" the suspect has invoked his right to counsel might be viewed as adopting a higher standard of proof than "unambiguous[ness]," I would reject its "certain[ty]" language.

curiam)). Where the parties "[do] not dispute the content of [a defendant's] statements to the police[,] . . . appellate consideration of the circuit court's denial of [the defendant's] motion to suppress is restricted to a *de novo* review of the legal issue of whether [the defendant's] words, taken in context, were sufficient to invoke his right to counsel." Hilliard, 270 Va. at 50, 613 S.E.2d at 584.

The majority concedes appellant's statement itself, "That's what I want, a lawyer, man," was unequivocal and, thus, that it must examine the context in which appellant made that statement. In determining whether the context of the statement resulted in ambiguity, the majority opinion omits certain testimony of the investigators which is critical to determining whether the trial court erred in concluding appellant's statement was not an invocation of his Fifth Amendment right to counsel.

As the majority opinion indicates, on the night of appellant's arrest, the investigators advised him of his rights pursuant to Miranda, and he waived those rights, including his right to have counsel present. He then spoke with Investigators Chaney and Nicholson for two hours, during which time he said nothing incriminating. This was his first meeting with the investigators. The next morning, appellant asked to talk to Investigator Chaney again. The majority opinion accurately reflects the two men had what was their *second* meeting at about 10:00 a.m. that morning and that appellant "instigate[d]" this meeting. When Investigator Chaney went to see appellant in his holding cell near the district court courtroom, appellant asked "to go home," saying "[he] want[ed] to see [his] [infant] son," and Investigator Chaney told appellant, "[Y]ou can't go home. You're charged, you know, with shooting into an occupied vehicle resulting in death." Chaney testified that, after that exchange, "[they] just had . . . basic conversation," and Chaney said, "[W]ell, I'm going back downstairs . . . but I'll bring

- 18 -

you down later to the office and talk to you again." Chaney did not testify *appellant* gave any indication at that time that he wished to talk further with the investigators.

Several hours later, Investigator Chaney had appellant brought to the investigators' office, where they conducted the videotaped interview. This was Investigator Chaney's *third* meeting with appellant. Investigator Chaney testified unequivocally that he and Investigator Nicholson, not appellant, initiated this third meeting, saying we "had [appellant] brought up . . . [because] we wanted to talk to him again." At the beginning of the videotaped interview, Investigator Chaney confirmed he and Nicholson initiated this third meeting, and Chaney then expressly discussed appellant's *right to have counsel present during the impending interrogation*:

> Inv. Chaney: You wanna, you want to talk to us some more?
>
> *Appellant: Ya'll want to talk to me or something?*
>
> *Inv. Chaney: Yeah. You want to talk to us?*
>
> *Appellant: Ya'll want to talk to me. I ain't doing nothing [inaudible] sitting.*
>
> Inv. Chaney: Well reason we ask is 'cause we brought you back over that, this morning you asked for me, and we brought you back over here[,] the reason I'm asking you is because your rights still apply. You still understand your rights?
>
> Appellant: I have the right to remain silent.
>
> Capt. Nicholson: Yeah.
>
> Inv. Chaney: Everything that I read you last night, do you still understand your rights?
>
> Appellant: Mmm-hmm.
>
> Inv. Chaney: You can have a lawyer present if you want one.

> Appellant: I want, that's what I need. I want to know what's, you know what I'm saying?
>
> Inv. Chaney: You can stop answering at any time.
>
> Appellant: That's what I want, a lawyer, man.

(Emphasis added).

I would hold an objective examination of appellant's statement in the full context in which it was made compels the conclusion, as a matter of law, that appellant unequivocally invoked his right to counsel under the Fifth Amendment and that the officers violated that right by failing immediately to cease questioning him. It is true that the evidence, viewed in the light most favorable to the Commonwealth, established appellant had been brought to the courthouse for arraignment and "appoint[ment] [of]" "an attorney . . . under his Sixth Amendment rights" and that these things did not actually take place as scheduled that morning. Nevertheless, the video-recorded exchange between appellant and the officers establishes that appellant asserted his right to an attorney *in the context of the impending custodial interrogation, initiated by the investigators, and their review of his rights pursuant to* <u>Miranda</u>. As quoted above, when Investigator Chaney reminded appellant of his right to "have a lawyer present [for questioning] if [he] want[ed] one," appellant responded "[T]hat's what I need." When Investigator Chaney proceeded to tell appellant that he "[could] stop answering at any time," appellant again focused on his right to have "a lawyer present," saying "That's what I want, a lawyer, man."

As set out above, the United States and Virginia Supreme Courts have recognized, and the majority opinion does not adequately acknowledge, that "[a] statement either asserts or fails to assert an accused's right to counsel" and "*an accused's subsequent statements are not relevant to the question whether he invoked his right to counsel.*" <u>Redmond</u>, 264 Va. at 327, 568 S.E.2d at 698 (emphasis added) (citing <u>Smith</u>, 469 U.S. at 97-98). Applying these principles to the circumstances of this case, I would hold as a matter of law that appellant's statement constituted

- 20 -

an unequivocal invocation of his right to have counsel present during the custodial interrogation and that the investigators violated appellant's Fifth Amendment right to counsel by failing scrupulously to honor that request. In the face of the clear invocation of that right, the officers lacked authority to ask any clarifying questions, and the answers to those questions must be disregarded.[15] See id.

To the extent the Commonwealth argues and the majority implies Investigator Chaney may have thought it was unlikely that appellant was invoking his Fifth Amendment right to counsel because *appellant* initiated the meeting that was video recorded, any such inference was objectively unreasonable on the facts of this case, viewed in the light most favorable to the Commonwealth. Investigator Chaney's testimony indicates appellant initiated only the *second* meeting, which took place at appellant's district court holding cell and involved appellant's asking to go home to see his infant son, which Chaney said would not be possible. After some additional "basic conversation," Investigator Chaney told appellant he would bring appellant over to talk again later in the day, but Chaney gave no indication that he did so because appellant

---

[15] The fact that appellant subsequently referenced his belief that he had been brought to court that day so that counsel could be appointed for him did not negate his prior statement that he wanted an attorney present for questioning. The fact that the clarifying questions had nothing to do with the charged crimes does not support the conclusion that no Fifth Amendment violation could have occurred. As the Supreme Court has observed, if a suspect invokes his right to have counsel present, thereby indicating his

> "belie[f] that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of 'inherently compelling pressures' and not the purely voluntary choice of the suspect."

Zektaw, 278 Va. at 136, 677 S.E.2d at 53 (quoting Arizona v. Roberson, 486 U.S. 675, 681 (1988)); see also Michigan v. Harvey, 494 U.S. 344, 350 (1990) (noting Edwards "established [a] . . . prophylactic rule designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights"), quoted with approval in Montejo v. Louisiana, 129 S. Ct. 2079, 2085 (2009).

expressed a desire to talk to him further or to discuss the crime for which he stood charged.  In addition, appellant indicated in the dialog at the beginning of the video recording that he was in the investigators' office because "Ya'll want to talk to me."  When Investigator Chaney agreed they wanted to talk to appellant and inquired, "You want to talk to us?" appellant responded once again, "Ya'll want to talk to me."

Thus, the evidence, viewed in the light most favorable to the Commonwealth, indicates that when appellant said, "That's what I want, a lawyer, man," he had been brought to the investigators' office for additional questioning at the investigators' request rather than his own and the investigators were in the process of readvising him of his rights pursuant to <u>Miranda</u>. Under these circumstances, the objective evidence indicates as a matter of law that appellant unequivocally invoked his Fifth Amendment right to counsel, compelling the suppression of the statements he made when the investigators failed immediately to cease that interrogation. Accordingly, I respectfully dissent from the majority's decision affirming the admission of appellant's uncounseled confession.